Malcolm J. BEZET

v.

UNITED STATES

CIVIL ACTION CASE NO. 16–2545

United States District Court,
E.D. Louisiana.

Signed 03/17/2017

Malcolm J. Bezet, New Orleans, LA, pro se.

Gary Daniel Feldon, U.S. Department of Justice, Washington, DC, Peter M. Mansfield, U.S. Attorney's Office, New Orleans, LA, for United States.

SECTION: "G"(1)

**ORDER**

NANNETTE JOLIVETTE BROWN, · UNITED STATES DISTRICT JUDGE

In this litigation, Plaintiff Malcolm Bezet ("Plaintiff"), proceeding *pro se*, alleges that certain provisions of the Gun Control Act of 1968 ("GCA") and the National Firearms Act ("NFA") are unconstitutional under the Second Amendment, the Necessary and Proper Clause, and the Tenth Amendment.[1] Pending before the Court is Defendant United States of America's ("the Government") "Motion to Dismiss."[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the Government's "Motion to Dismiss."[3] Also pending before the Court is Plaintiff's "Motion for Partial Preliminary Injunction."[4] Because the Court finds that the Government's motion to dismiss should be granted, the Court will deny as moot Plaintiff's motion for a partial preliminary injunction.[5]

## I. Background

### A. Plaintiff's Complaint

In this litigation, Plaintiff, proceeding *pro se*, contends that he wants to perform a series of modifications to a semiautomatic pistol he lawfully possesses in order to convert the weapon into a fully automatic, silenced rifle.[6] However, Plaintiff avers that he is prevented from doing so by certain provisions of the Gun Control Act of 1968 and the National Firearms Act.[7] With regard to the GCA, Plaintiff argues the following provisions are unconstitutional: (1) 18 U.S.C. § 922(*l*), which bans the importation of firearms and ammunition regulated under the GCA unless authorized by the Attorney General; (2) 18 U.S.C. § 922(r), which forbids assembling such weapons from imported parts; and (3) 18 U.S.C. § 922(*o*), which makes it unlawful to transfer or possess any machine gun manufactured after May 19, 1986.[8] With regard to the NFA, Plaintiff contends the following provisions are also unconstitutional: (1) 26 U.S.C. § 5811, which taxes the transfer of such weapons as machine guns, silencers, short barreled rifles, and short barreled shotguns; (2) 26 U.S.C. § 5821, which taxes the making of such weapons; and (3) 26 U.S.C. § 5812, which establishes the registration and application requirements for transfers of such weapons.[9] Additionally, the Court notes that in his final "prayer for relief" section of his complaint, Plaintiff requests for the first time the additional relief of an injunction against 26 U.S.C. § 5822, which establishes registration and application re-

---

1. Rec. Doc. 1 at 16; Rec. Doc. 8–1 at 1.

2. Rec. Doc. 8.

3. *Id.*

4. Rec. Doc. 15.

5. *Id.*

6. Rec. Doc. 1 at 16; Rec. Doc. 8–1 at 4.

7. Rec. Doc. 1 at 16.

8. *Id.* at 16–17.

9. *Id.* at 17–19.

quirements for the making of such weapons.[10]

In sum, Plaintiff argues that these provisions of the GCA and NFA are unconstitutional under the Second Amendment, the Necessary and Proper Clause, and the Tenth Amendment, as they deny him access to weapons that are "part of the ordinary military equipment and whose use could contribute to the common defense of the State of Louisiana or his own personal defense" and because they exceed the scope of Congress's enumerated powers.[11] In particular, Plaintiff avers that he is currently in lawful possession of a 5.56x45 caliber semiautomatic pistol (commonly referred to as a "Draco"), which is a derivative of a Romanian AIMR, a "short-barreled rifle" capable of both semiautomatic and automatic fire that is banned from importation by the GCA (18 U.S.C. § 922(l)).[12] Plaintiff contends that he wishes to restore his semiautomatic pistol to its rifle configuration.[13] Plaintiff also seeks to add a firearm muffler (referred to under the law as a "silencer") to protect his hearing and a shoulder stock to increase his firearm's long range accuracy.[14]

However, Plaintiff argues that to legally add a stock and silencer to his weapon, he must: (1) register both the short-barreled rifle and silencer with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); (2) pay a $200 tax on each pursuant to NFA (26 U.S.C. § 5811); and (3) replace key parts of the Draco pistol with American-made parts to comply with the GCA (18 U.S.C. § 922(r)).[15] Additionally, Plaintiff seeks to restore his Draco pistol to a fully automatic AIMR configuration, but avers that, because it was manufactured after May 19, 1986, the GCA prohibits him from doing so (18 U.S.C. § 922(o)).[16] Plaintiff further avers that the GCA also prohibits him from importing certain types of weapons, e.g., machine guns and selective fire military assault rifles, or assembling them from imported parts unless authorized by the Attorney General.[17] Plaintiff represents that failing to comply with these provisions in the GCA or NFA would subject him, upon conviction, to imprisonment for up to ten years and/or fines of up to $10,000.[18]

Plaintiff seeks a permanent injunction against these provisions of the GCA and NFA.[19] Plaintiff asserts that, pursuant to *District of Columbia v. Heller*,[20] the Second Amendment confers an individual right to keep and bear arms capable of contributing to the common defense of the states and an individual's self-defense.[21] Plaintiff argues that this right, "[a]t a minimum," encompasses the small arms that "compose ordinary military equipment, including machine guns, fully automatic assault rifles, semi-automatic assault rifles, short-barreled rifles, short-barreled shotguns, pistols, and firearm silencers."[22] Additionally, Plaintiff alleges that the GCA and NFA violate the Tenth Amendment[23]

---

10. *Id.* at 19–20.

11. Rec. Doc. 1 at 16; Rec. Doc. 8–1 at 1.

12. Rec. Doc. 1 at 7.

13. *Id.*

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.* at 10.

18. *Id.* at 7.

19. *Id.* at 9.

20. 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

21. Rec. Doc. 1 at 8.

22. *Id.*

23. *Id.* at 9.

and exceed the United States' powers under the Necessary and Proper Clause, as the sale, transfer, and possession of firearms are wholly intrastate commerce, and thus may only be regulated by the states.[24] Accordingly, Plaintiff asserts six causes of action seeking permanent injunctive relief against provisions of the GCA and NFA.[25]

### B. Procedural History

On March 29, 2016, Plaintiff filed a complaint in this matter.[26] On June 24, 2016, the Government filed the instant motion to dismiss.[27] On July 5, 2016, Plaintiff filed an opposition.[28] With leave of Court, the Government filed a reply on July 22, 2016.[29] On July 28, 2016, with leave of Court, Plaintiff filed a sur-reply.[30] On July 26, 2016, Plaintiff filed a motion for a partial preliminary injunction.[31] On August 9, 2016, the Government filed an opposition.[32]

### II. Parties' Arguments

### A. Defendant's Arguments in Support of the Motion to Dismiss

In this motion, the Government asserts that Plaintiff's claims should be dismissed because: (1) Plaintiff lacks standing to assert three of his six claims pursuant to Federal Rule of Civil Procedure 12(b)(1); and (2) Plaintiff has failed to state any claim upon which relief can be granted

pursuant to Federal Rule of Civil Procedure 12(b)(6).[33]

### 1. Whether Plaintiff Lacks Standing to Assert Three of His Six Claims

The Government asserts that Plaintiff lacks standing to assert three of his six claims.[34] First, the Government argues that Plaintiff cannot show injury-in-fact for his challenge to the NFA under 26 U.S.C. §§ 5811, 5812.[35] The Government avers that Plaintiff is challenging portions of the NFA that require individuals who wish *to transfer* a firearm to register the transfer and pay a tax.[36] The Government argues, however, that Plaintiff does not allege he wishes to transfer a firearm, but instead wants to have a firearm transferred to him.[37] According to the Government, the NFA does not require the transferee to register the firearm transfer or pay the tax, and Plaintiff has not alleged otherwise.[38] Moreover, the Government points out that Plaintiff has not alleged that the requirements on transferors would affect him as a potential transferee.[39] Thus, the Government contends that because Plaintiff has not alleged injury-in-fact with regard to the registration and tax requirements of the NFA (28 U.S.C. §§ 5811, 5812), his claims should be dismissed for lack of standing.[40]

24. *Id.*

25. Rec. Doc. 1 at 16–21.

26. Rec. Doc. 1.

27. Rec. Doc. 8.

28. Rec. Doc. 9.

29. Rec. Doc. 13.

30. Rec. Doc. 17.

31. Rec. Doc. 15.

32. Rec. Doc. 19.

33. Rec. Doc. 8–1 at 1.

34. *Id.* at 6.

35. *Id.*

36. *Id.*

37. *Id.*

38. *Id.*

39. *Id.* at 7.

40. *Id.* at 6–7.

Second, the Government avers that Plaintiff cannot show redressability or traceability on his claims seeking to invalidate provisions of the Gun Control Act of 1968 ("GCA") banning possession of a fully automatic weapon (commonly referred to as a "machine gun") because Louisiana law also bars him from having one.[41] The Government asserts that traceability is present when a plaintiff's injury-in-fact is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." [42] The Government also contends that redressability requires that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." [43] The Government argues that neither standing requirements of traceability or redressability are met because Louisiana law also bans machine guns.[44] The Government points to *Hollis v. Lynch*, a Northern District of Texas case that held that a plaintiff lacked standing to challenge the NFA and GCA when Texas state law independently prohibited the plaintiff from manufacturing a machine gun as well.[45] Likewise, the Government asserts that the Supreme Court has also held that a plaintiff lacks standing when similar limitations imposed by state law would remain unchanged even if the plaintiff were to receive a favorable ruling.[46]

## 2. Whether All Six of Plaintiff's Claims Should be Dismissed Under Rule 12(b)(6)

Next, the Government alleges that all six of Plaintiff's claims under the Second Amendment, Necessary and Proper Clause, and Tenth Amendment fail because the NFA and GCA do not infringe on the Second Amendment, and because Congress acted within its proper authority when it passed the two statutes.[47]

### a. Plaintiff's Claims under the Second Amendment

According to the Government, the Fifth Circuit applies a two-step analysis developed in *NRA v. Bureau of Alcohol, Tobacco, Firearms & Explosives* to determine whether a law violates the Second Amendment.[48] The Government avers that the "first step is to determine whether the challenged law impinges upon a right protected by the Second Amendment." [49] If the challenged law falls within the scope of the Second Amendment, the Government contends, then "the second step is to determine whether to apply intermediate or strict scrutiny to the law, and then to determine whether the law survives the proper level of scrutiny." [50]

First, the Government argues that the challenged provisions of the GCA and NFA fall outside the scope of the Second

41. *Id.* at 7 (citing La. Rev. Stat. § 40:1752 ("No person shall ... possess ... any machine gun within this state ....")).

42. *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

43. *Id.* (quoting *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130).

44. *Id.* (citing La. Rev. Stat. Ann. § 40:1752 ("No person shall ... possess ... any machine gun within this state ....")).

45. *Id.* at 7–8 (citing 121 F.Supp.3d 617 (N.D. Tex. 2015)).

46. *Id.* at 8 (quoting *McConnell v. FEC*, 540 U.S. 93, 229, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010)).

47. *Id.* at 9.

48. *Id.*

49. *Id.* (quoting *NRA v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 194–95 (5th Cir. 2012)).

50. *Id.*

Amendment, and thus Plaintiff has failed to satisfy the first prong of the Fifth Circuit's two-step *NRA* analysis.[51] The Government represents that the Supreme Court held in *District of Columbia v. Heller* that the Second Amendment right "extends only to certain types of weapons."[52] According to the Government, the Supreme Court made clear that the only weapons protected under the Second Amendment are those "in common use" and "typically possessed by law-abiding citizens for lawful purposes."[53] Thus, the Government asserts that, as numerous courts have held, the Second Amendment does not protect the possession of silencers, short-barreled rifles, or machine guns.[54] The Government represents that both statutes were passed by Congress for the constitutional purpose of reducing the use of a certain set of especially dangerous weapons by criminals or those who might misuse them.[55] The Government argues that because there is no right to possess a silenced, short-barreled machine gun, then Plaintiff cannot have a constitutional right to transfer, make, or import such a weapon either.[56]

Moreover, the Government avers that the "longstanding nature" of the NFA and GCA challenged by Plaintiff supports the holding that they do not implicate Second Amendment rights.[57] The Government points out that the Fifth Circuit has previously held that a "longstanding, presumptively lawful regulatory measure—whether or not it is specified on *Heller*'s illustrative list—would likely fall outside the ambit of the Second Amendment; that is, such a measure would likely be upheld at step one of our framework."[58] The Government contends that Congress first began placing restrictions on machine guns, silencers, and short-barreled rifles when it passed the NFA in 1934, making the challenged regulations "longstanding."[59] The Government further asserts that no court has found these statutes facially invalid for any reason.[60]

Second, the Government avers that, even if the Court found that the NFA and

51. *Id.* at 9–10.

52. *Id.* at 10 (citing *District of Columbia v. Heller*, 554 U.S. 570, 623, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)).

53. *Id.* (citing *Heller*, 554 U.S. at 625, 627, 128 S.Ct. 2783).

54. *Id.* (citing *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial Number: LW0011804*, No. 15-2859, 2016 WL 2893670, at *7, 2016 U.S. App. LEXIS 9050, at *17 (3d Cir. May 18, 2016); *Kwong v. Bloomberg*, 723 F.3d 160, 168 (2d Cir. 2013); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012); *United States v. Chafin*, 423 Fed.Appx. 342, 344 (4th Cir. 2011); *United States v. McCartney*, 357 Fed.Appx. 73, 76 (9th Cir. 2009); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008); *United States v. King*, 532 F.2d 505, 510 (5th Cir. 1976); *United States v. Gonzalez*, No. 2:10-cr-00967 CW, 2011 U.S. Dist. LEXIS 127121, at *18–20 (D. Utah Nov. 2, 2011); *United States v. Tanis*, Nos. 03:05-cr-117, 03:09-cv-1832, 03:07-cr-090, 3:09-cv-01833, 2010 WL 2196445, at *9-10, 2010 U.S. Dist. LEXIS 51848, at *23 (M.D. Pa. May 26, 2010); *United States v. Perkins*, 4:08CR 3064, 2008 WL 4372821, at *4, 2008 U.S. Dist. LEXIS 72892, at *10 (D. Neb. Sept. 12, 2008); *United States v. Garnett*, 05–CR–20002-3, 2008 WL 2796098, at *4-5, 2008 U.S. Dist. LEXIS 112728, at *14 (E.D. Mich. July 17, 2008); *Gilbert Equip. Co. v. Higgins*, 709 F.Supp. 1071, 1080–81 (S.D. Ala. 1989)).

55. *Id.* at 2–3 (citing *Thompson/Center Arms Co.*, 504 U.S. at 517, 112 S.Ct. 2102; H.R. Rep. No. 83–1337, at A395, 1954 U.S.C.C.A.N. at 4552).

56. *Id.* at 11.

57. *Id.*

58. *Id.* (citing *NRA*, 700 F.3d at 196).

59. *Id.* (citing *NRA*, 700 F.3d at 196; *Silveira v. Lockyer*, 312 F.3d 1052, 1058 (9th Cir. 2002)).

60. *Id.* at 11–12 (citing *United States v. Miller*, 307 U.S. 174, 178, 59 S.Ct. 816, 83 L.Ed.

GCA did implicate Plaintiff's Second Amendment rights, they would be upheld under the second step of the *NRA* analysis.[61] The Government contends that regulations that do not encroach on the core of the Second Amendment, *i.e.* "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," receive intermediate scrutiny.[62] Here, the Government argues that intermediate scrutiny would apply, as Plaintiff already has access to a handgun for the purpose of self-defense and there is no similar tradition for using silenced, short-barreled machine guns for self-defense in one's home.[63] In fact, the Government asserts, Congress passed the NFA and GCA "to regulate . . . certain unusually dangerous weapons . . . for which Congress saw no legitimate uses."[64] The Government represents that the Fifth Circuit has previously held that "machine guns, shortbarreled shotguns, and short-barreled rifles are primarily weapons of war and have no appropriate sporting use or use for personal protection."[65] Therefore, the Government argues that there are reasonable fits between the challenged laws and the important government objectives they serve, and thus they pass intermediate scrutiny.[66]

### b. Plaintiff's Necessary and Proper Clause and Tenth Amendment Claims

The Government further contends that binding precedent forecloses all of Plaintiff's claims under the Necessary and Proper Clause and the Tenth Amendment, as it is clear that Congress had the constitutional authority to enact the GCA and NFA.[67] According to the Government, "in determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact [or apply] a particular federal statute, [courts] look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power."[68] Likewise, the Government asserts that Congress does not exceed the limits of the Tenth Amendment when it acts within the scope of the powers delegated by the Constitution.[69] Thus, a law that is found to be a "necessary and proper exercise of a delegated power," by definition, does not violate the Tenth Amendment.[70]

Here, the Government avers that a "multitude of cases" have held that the NFA and GCA were valid exercises of the United States' delegated powers.[71] First,

1206 (1939); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012); *United States v. Marzzarella*, 614 F.3d 85, 94–95 (3d Cir. 2010); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008)).

61. *Id.* at 12.

62. *Id.* (quoting *Heller*, 554 U.S. at 635, 128 S.Ct. 2783) (citing *NRA*, 700 F.3d at 195).

63. *Id.*

64. *Id.* (quoting *United States v. Posnjak*, 457 F.2d 1110, 1111 (2d Cir. 1972) (citing *United States v. Dunn*, 946 F.2d 615, 621 (9th Cir. 1991))).

65. *Id.* at 12–13 (quoting *United States v. Jennings*, 195 F.3d 795, 799 n. 4 (5th Cir. 1999) (quoting S. Rep. No. 90–151, at 28 (1968)).

66. *Id.* at 13.

67. *Id.*

68. *Id.* at 13–14 (quoting *United States v. Comstock*, 560 U.S. 126, 134, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010)) (alterations in the original).

69. *Id.* (quoting *Sperry v. Florida*, 373 U.S. 379, 403, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963); *United States v. DeCay*, 620 F.3d 534, 542 (5th Cir. 2010)).

70. *Id.* at 14.

71. *Id.*

the Government argues that the NFA's taxation and registration requirements were passed pursuant to Congress's taxing power.[72] The Government points out that both the Supreme Court and the Fifth Circuit have held that the taxing power gives Congress the authority to impose taxes on the making and transferring of firearms.[73] Thus, the Government avers, the NFA does not violate the Tenth Amendment or the Necessary and Proper Clause.[74]

Second, the Government asserts that the GCA was constitutionally enacted pursuant to the Commerce Clause.[75] According to the Government, the Fifth Circuit has previously held that the GCA's prohibition on transferring or owning a machine gun is a valid exercise of Congress's Commerce Clause powers, as the provision regulates conduct with a substantial effect on interstate commerce.[76] Likewise, the Government argues that the same rationale applies to Congress's ban on importing or assembling firearms from imported parts, as it directly involves regulations on foreign commerce.[77] Therefore, the Government contends that because Congress acted within its authority in enacting the NFA and GCA, and because those acts are rationally related to Congress's enumerated powers, Plaintiff's Tenth Amendment and Necessary and Proper Clause challenges fail.[78]

## B. Plaintiff's Arguments in Opposition to the Motion to Dismiss

In response, Plaintiff argues that he only wishes to convert his pistol into a version of a Romanian AIMR because the allegedly unconstitutional regulations under the GCA and NFA prevent him from acquiring an actual AIMR.[79] However, Plaintiff asserts that the primary intent of his complaint is not to make an AIMR, but to "obtain weapons that are part of the ordinary military equipment and whose use could contribute to the common defense of the State of Louisiana or his own personal defense as is his right under the Second Amendment."[80]

### 1. Whether Plaintiff has Standing to Assert Three of his Six Claims

Plaintiff contends that the plain language of the NFA's taxation and registration requirements for transfers of certain firearms (18 U.S.C. §§ 5811, 5812) apply to Plaintiff.[81] According to Plaintiff, in order to transfer a firearm covered by the NFA, a written application must be filed with the Secretary of the Treasury that identifies the transferee and includes the transferee's fingerprints and photograph.[82] Plaintiff states that the application must also show that the Secretary of the Treasury has approved the transfer and the registration of the firearm to the transferee.[83]

---

72. *Id.* (citing *Sonzinsky v. United States*, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772 (1937); *United States v. Lim*, 444 F.3d 910, 912–13 (7th Cir. 2006); *United States v. Gresham*, 118 F.3d 258, 262 (5th Cir. 1997): *United States v. Ardoin*, 19 F.3d 177, 180 (5th Cir. 1994); *United States v. Dalton*, 960 F.2d 121, 124–25 (10th Cir. 1992)).

73. *Id.*

74. *Id.*

75. *Id.* (citing *Gillespie v. City of Indianapolis*, 185 F.3d 693, 704 (7th Cir. 1999)).

76. *Id.* at 15 (citing *United States v. Knutson*, 113 F.3d 27, 31 (5th Cir. 1997)).

77. *Id.*

78. *Id.* at 15–16.

79. Rec. Doc. 9 at 2.

80. *Id.*

81. *Id.* at 2–3.

82. *Id.* (citing 26 U.S.C. § 5812).

83. *Id.*

Moreover, Plaintiff points out that the statute simply requires the tax to be paid and a tax stamp affixed to the original application form, and Plaintiff argues that such costs would be ultimately passed on to the transferee.[84]

Plaintiff further avers that if he succeeds in striking down the GCA's ban on machine guns (18 U.S.C. § 922(o)) on Second Amendment grounds, "he can then immediately move to strike down" Louisiana's state law ban on machine guns (Louisiana Revised Statute § 40:1752) on the same grounds.[85] Moreover, Plaintiff avers that Louisiana's state ban only applies within Louisiana; if he succeeds in striking down the federal ban, Plaintiff contends, he can then lawfully possess and maintain machine guns in areas outside of Louisiana.[86] Thus, Plaintiff asserts that the Government's traceability and redressability arguments are without merit.[87]

## 2. Whether All of Plaintiff's Claims Should be Dismissed Under Rule 12(b)(6)

### a. Plaintiff's Claims under the Second Amendment

Plaintiff avers that in *Heller* and *Caetano*, the Supreme Court held that the rights provided by the Second Amendment extend to "all instruments that constitute bearable arms."[88] Plaintiff represents that the term "arms" is defined by the Supreme Court as "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another."[89] Plaintiff argues that the Government's definition of "arms" protected by the Second Amendment as weapons that are in common use or typically possessed by law-abiding citizens for lawful purposes is contrary to controlling Supreme Court precedent.[90] Plaintiff asserts that the fact that he already possesses a handgun is irrelevant to this constitutional analysis.[91]

According to Plaintiff, the Supreme Court held in *Miller* that the Second Amendment protects the right to keep arms used as "ordinary military equipment" or ones that "could contribute to the common defense."[92] Plaintiff alleges that this is because the Second Amendment aims to preserve the citizens' militia in each state to counter a potential oppressive military force or threats from the federal government.[93] Plaintiff argues that, contrary to the Government's claim that shortbarreled machine guns are not in "common use," the Government "has issued millions of" these types of weapons to members of the military and law enforcement officers as standard issue equipment.[94] Plaintiff asserts that the Government is attempting to do exactly what the Second Amendment seeks to prevent: the elimination of citizens' militia by taking

84. *Id.* at 3.

85. *Id.*

86. *Id.* at 3–4.

87. *Id.* at 4.

88. *Id.* (citing *Caetano v. Massachusetts,* — U.S. ——, 136 S.Ct. 1027, 194 L.Ed.2d 99 (2016); *Heller,* 554 U.S. at 582, 128 S.Ct. 2783).

89. *Id.* (quoting *Heller,* 554 U.S. at 581, 128 S.Ct. 2783.).

90. *Id.* at 5.

91. *Id.* at 6 (citing *Heller,* 554 U.S. at 629, 128 S.Ct. 2783).

92. *Id.* at 7 (quoting *United States v. Miller,* 307 U.S. 174, 178, 59 S.Ct. 816, 83 L.Ed. 1206 (1939)).

93. *Id.* (citing *Heller,* 554 U.S. at 599, 624, 128 S.Ct. 2783).

94. *Id.* at 9.

away the people's arms.[95] Plaintiff contends that questions regarding whether certain weapons are in common use or typically possessed by law-abiding citizens for lawful purposes are questions of fact to be determined at trial.[96]

Plaintiff further avers that silenced, short-barreled machine guns are the "most effective weapons for defense of hearth and home," because: (1) the silencer protects the shooter's hearing from permanent damage; (2) the short barrel makes the weapon more maneuverable in confined spaces such as hallways; and (3) fully automatic fire allows a shooter to more quickly address any threat.[97] Plaintiff alleges that these weapons thus have personal protection uses, which Plaintiff contends is supported by the fact that the GCA and NFA provisions do not apply to law enforcement personnel who face the same criminals that law-abiding citizens do.[98] Plaintiff argues that the GCA and NFA place Plaintiff at a disadvantage compared to criminals who do not follow the law and can easily arm themselves with the types of weapons Plaintiff seeks.[99]

Plaintiff avers that the Supreme Court rejected the Government's arguments that "longstanding" provisions are constitutional in *Heller*, where the Supreme Court held that "nothing in our precedents forecloses our adoption of the original understanding of the Second Amendment."[100] Plaintiff argues that the Government's

laws restricting the use of certain arms that would be used in defense of hearth and home are subject to strict scrutiny.[101] However, Plaintiff asserts that, under any standard of scrutiny that the Court may apply, these provisions cannot pass constitutional muster.[102]

### b. Plaintiff's Necessary and Proper Clause and Tenth Amendment Claims

Next, Plaintiff contends that the Government lacks an enumerated power in the Constitution to infringe on Plaintiff's right to keep and bear arms.[103] Plaintiff argues that because Congress has no general police power or specific power to enact gun control, these laws are neither "necessary and proper" nor within the bounds of the federal government's authority under the Tenth Amendment.[104] Additionally, Plaintiff avers that the Commerce Clause does not permit Congress to regulate intrastate commerce, which is reserved to the states under the Tenth Amendment.[105] According to Plaintiff, the GCA was passed to control the possession and trafficking of arms "*within* the Several States." [106] Plaintiff points to *United States v. Lopez*, where the Supreme Court struck down 18 U.S.C. § 922(q), a provision of the GCA criminalizing the possession of a firearm in a school zone.[107] Plaintiff represents that the Supreme Court held in *Lopez* that the statute had "nothing to do with 'commerce' or any sort of economic enterprise," and it

95. *Id.*

96. *Id.* at 5.

97. *Id.* at 10.

98. *Id.* at 10–11.

99. *Id.* at 11.

100. *Id.* (quoting *Heller*, 554 U.S. at 625–26, 128 S.Ct. 2783).

101. *Id.* at 13.

102. *Id.* at 12–13.

103. *Id.* at 14.

104. *Id.* at 14–15.

105. *Id.* at 16.

106. *Id.* at 16–17 (emphasis in original).

107. *Id.* at 17 (citing *United States v. Lopez*, 514 U.S. 549, 560–61, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)).

was not "an essential part of a larger regulation of economic activity[.]"[108] Plaintiff asserts that the same logic applies here to 18 U.S.C. § 922(o), as the possession of a silenced, shortbarreled machine gun in his home is not an economic activity and does not have a substantial effect on any interstate commerce.[109]

Plaintiff likewise argues that the Government's taxation power cannot be used to regulate the possession of firearms.[110] Plaintiff contends that Congress's taxation power is a revenue raising power, and not a general police power.[111] Plaintiff asserts that the NFA's tax on transfers of certain firearms is a pretext to regulate weapons, not raise revenue, and thus violates the Necessary and Proper Clause and the Tenth Amendment.[112] Plaintiff points out that the Government admits in its own motion to dismiss that the NFA was passed to regulate weapons, and that the ATF's National Firearms Act Handbook explicitly states that the NFA "had an underlying purpose unrelated to revenue collection."[113] Plaintiff avers that allowing the Government to tax the type of arms a citizen can keep and bear under the Second Amendment is the equivalent of allowing the Government to tax the content of speech protected by the First Amendment.[114] Plaintiff argues that the Government does not have the power to tax what

it cannot otherwise impede, burden, or control through an enumerated power.[115]

## C. Defendant's Reply in Further Support of its Motion to Dismiss

The Government contends that Plaintiff lacks standing to assert his three claims challenging the NFA transfer requirements, as the NFA only imposes requirements on the transferors, not transferees.[116] The Government asserts that Plaintiff's argument that there is injury in fact here because the transfer application must include Plaintiff's name, photograph, and fingerprints and a transferor might pass on the cost of the $200 tax to Plaintiff is insufficient in light of existing case law.[117] The Government points out that in *Lane v. Holder*, the Fourth Circuit Court of Appeals found that the plaintiffs lacked standing to challenge the GCA's "requirement that interstate transfers of firearms take place through federal firearms licensees" because the plaintiffs were not federal firearm licensees, and thus the challenged laws and regulations did not apply to them.[118] According to the Government, Plaintiff's claims are even weaker, as he has not articulated how providing identifying information would appreciably burden his rights under the Second Amendment.[119] Likewise, the Government argues that Plaintiff's "unsupported assertion" that the tax on transferors would be passed on to him fails as a matter of law.[120]

---

108. *Id.*

109. *Id.* at 18–19 (citing *Lopez*, 514 U.S. at 567, 115 S.Ct. 1624).

110. *Id.* at 20.

111. *Id.*

112. *Id.*

113. *Id.* at 21 (quoting *National Firearms Act Handbook*, Bureau of Alcohol, Tobacco, Firearms and Explosives, at I, ATF E–Publication 5320.8 (Revised April 2009)).

114. *Id.* at 22.

115. *Id.* at 22–23 (citing *McCulloch v. Maryland*, 17 U.S. 316, 317, 4 Wheat. 316, 4 L.Ed. 579 (1819)).

116. Rec. Doc. 13 at 2.

117. *Id.*

118. *Id.* (citing *Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012)).

119. *Id.* at 3.

120. *Id.* (citing *Lane*, 703 F.3d at 672; *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996)).

The Government also asserts that Plaintiff has not shown redressability or traceability for his challenge to the GCA's machine gun ban because Plaintiff did not seek to strike down Louisiana state law ban on machine guns in his complaint.[121] The Government avers that Plaintiff's argument that, if the federal law is invalidated, he could possess a machine gun outside Louisiana fails, as his complaint makes clear that he is a Louisiana citizen who seeks to exercise his Second Amendment rights "in his home" and as a member of the Louisiana militia.[122] Thus, the Government argues that Plaintiff's claims clearly contemplate conduct within Louisiana.[123]

### D. Plaintiff's Sur–Reply in Opposition to the Motion to Dismiss

Plaintiff asserts that the Supreme Court in *Heller* expanded the constitutional protections provided by the Second Amendment beyond *Miller*'s limited holding that the Second Amendment extends only to certain types of weapons.[124] Plaintiff notes that *Heller* explicitly stated that the Second Amendment extends to all instruments that constitute bearable arms, even if they did not exist at the time of the founding.[125] Plaintiff points out that the Supreme Court has found handguns and stun guns to be protected under the Second Amendment.[126] Plaintiff argues that there is "no doubt" that short-barreled machine guns are "ordinary military equipment" capable of contributing to the "common defense" similar to the standard issue M–4 carbine rifle used in the United States military.[127]

Plaintiff avers that the Government's citation to the Fourth Circuit's decision in *Lane v. Holder* is inapplicable to Plaintiff's standing to challenge the NFA's registration and taxation requirements, as *Lane* dealt with the GCA's separate requirements and a Virginia state law.[128] Moreover, Plaintiff contends that in *Carey v. Population Services International*, the Supreme Court held that "[a] plaintiff who alleges an injury based on restriction of distribution channels may be able to show standing if the defendant's actions directly affect that plaintiff."[129] Here, Plaintiff argues that the NFA's registration and taxation requirements on the transfer of certain firearms directly affects Plaintiff.[130] In addition, Plaintiff represents that, according to the ATF's website, it takes an average of nine months to obtain permission to add a stock or a silencer to a pistol, which Plaintiff contends shows he is directly affected by the law.[131] Plaintiff asserts that paying a $200 tax, waiting an average of nine months, and requiring the approval of the federal government transforms his individual Second Amendment right "into a privilege subject to the whim and denial of Defendant."[132] Plaintiff further avers that the fact that he can be prosecuted under the NFA for unknowingly possessing an unregistered firearm if the transferor fails

121. *Id.* at 4.

122. *Id.*

123. *Id.*

124. Rec. Doc. 17 at 2–3 (citing *Heller*, 554 U.S. at 623, 128 S.Ct. 2783; *Miller*, 307 U.S. at 178, 59 S.Ct. 816).

125. *Id.* at 3.

126. *Id.* at 4 (citing *Heller*, 554 U.S. at 623, 128 S.Ct. 2783; *Caetano*, 577 U.S. ——, 136 S.Ct. 1027 (2016)).

127. *Id.*

128. *Id.* at 6 (citing *Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012)).

129. *Id.* at 7 (citing *Carey v. Pop. Servs. Int'l*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977)).

130. *Id.*

131. *Id.* at 8.

132. *Id.* at 9.

to register the weapons shows he has standing to challenge the requirements.[133]

Plaintiff also asserts that there is no requirement that he must attempt to invalidate both Louisiana's and the federal separate bans on machine guns to have standing.[134] Plaintiff avers that the Fifth Circuit has rejected that argument, because finding a federal law unconstitutional under the Second Amendment would apply equally to state bans.[135] Moreover, Plaintiff argues that the GCA's ban on machine guns is ineffective, as it only prevents law-abiding citizens from acquiring such weapons while criminals have the ability to easily construct such a weapon.[136] Likewise, Plaintiff asserts that the NFA's requirements only apply to lawful transactions by law-abiding citizens.[137]

### III. Law and Analysis

#### A. Legal Standing for Motion to Dismiss Pursuant to Rule 12(b)(1)

Motions to dismiss pursuant to Federal Rule of Procedure 12(b)(1) seek to challenge the subject matter jurisdiction of the district court to hear a case.[138] Courts may find they lack subject matter jurisdiction by considering: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[139] Ultimately, a court should dismiss a case for lack of subject matter jurisdiction "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[140] The burden to prove that jurisdiction exists is on the party asserting jurisdiction.[141] When a Rule 12(b)(1) motion is filed alongside other Rule 12 challenges, the district court "should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[142]

 Under Article III of the United States Constitution, federal courts only have jurisdiction over "cases" or "controversies."[143] One requirement for a "case" or "controversy" is that the plaintiff must have standing to sue.[144] "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit[.]"[145]

133. *Id.* at 16–18.

134. *Id.* at 10–11.

135. *Id.* at 12–13 (citing *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016)).

136. *Id.* at 14–15.

137. *Id.* at 15.

138. Fed. R. Civ. P. 12(b)(1); *see Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

139. *Ramming*, 281 F.3d at 161 (*Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

140. *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

141. *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (plaintiff bears burden of establishing standing).

142. *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

143. U.S. Const. art. III, § 2, cl. 1; *see Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997); *Hollis v. Lynch*, 827 F.3d 436, 441 (5th Cir. 2016).

144. *Hollis*, 827 F.3d at 441.

145. *Raines*, 521 U.S. at 818, 117 S.Ct. 2312 (*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

The plaintiff must show that he has a "personal stake" in the dispute, and that the injury alleged in the complaint is particularized as to him.[146] To establish standing, the plaintiff must show: (1) he suffered an "injury in fact," which is a "concrete and particularized invasion of a legally protected interest" that is actual or imminent, and not conjectural or hypothetical; (2) there is a causal connection between the alleged harm and the defendant's conduct, such that the injury is fairly traceable to the challenged action rather than the result of a third party's independent action; and (3) it is likely, rather than merely speculative, that a favorable decision will redress the injury.[147]

## B. Legal Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[148] To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[149] A claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[150] A complaint need not contain "detailed factual allegations," but rather "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[151] In resolving a motion to dismiss, this Court "draw[s] all reasonable inferences in the Plaintiff[s'] favor."[152] Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [are] ... rarely granted."[153]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[154] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[155] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[156] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[157] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal

---

146. *Id.* at 819, 117 S.Ct. 2312 (citing *Lujan*, 504 U.S. at 560–561, 112 S.Ct. 2130); *see also Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 543–544, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (holding that a member of the school board who "has no personal stake in the outcome of the litigation" had no standing).

147. *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130; *Hollis*, 827 F.3d at 441.

148. Fed. R. Civ. P. 12(b)(6).

149. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

150. *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

151. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citations omitted).

152. *Id.*

153. *Id.*

154. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

155. *Iqbal*, 556 U.S. at 677–78, 129 S.Ct. 1937.

156. *Id.* at 679, 129 S.Ct. 1937.

157. *Id.* at 678, 129 S.Ct. 1937.

conclusions, or formulaic recitations of the elements of a, cause of action.[158] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[159] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[160] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[161]

In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings.[162] "If the district court considers information outside of the pleadings, the court must treat the motion [to dismiss] as a motion for summary judgment. Although the court may not go outside the complaint, the court may consider documents attached to the complaint."[163]

## C. Analysis

In this litigation, Plaintiff seeks to convert a pistol into a silenced, short-barreled machine gun and to generally acquire weapons that he contends are part of the "ordinary military equipment and whose use could contribute to the common defense of the State of Louisiana or his own personal defense."[164] However, Plaintiff asserts that he is prevented or hindered from doing so by certain provisions of the Gun Control Act of 1968 ("GCA") and the National Firearms Act ("NFA"), which Plaintiff contends are unconstitutional under the Second Amendment, the Necessary and Proper Clause, and the Tenth Amendment.[165]

With regard to the GCA, Plaintiff argues that the following provisions are unconstitutional: (1) 18 U.S.C. § 922($l$), which bans the importation of firearms and ammunition regulated under the GCA unless authorized by the Attorney General; (2) 18 U.S.C. § 922(r), which forbids assembling such weapons from imported parts; and (3) 18 U.S.C. § 922(o), which makes it unlawful to transfer or possess any machine gun manufactured after May 19, 1986.[166] With regard to the NFA, Plaintiff contends the following provisions are also unconstitutional: (1) 26 U.S.C. § 5811, which taxes the transfer of such weapons as machine guns, silencers, short barreled rifles, and short barreled shotguns; (2) 26 U.S.C. § 5812, which establishes the registration and application requirements for transfers of such weapons; and (3) 26 U.S.C. § 5821, which taxes the making of such weapons.[167]

Additionally, the Court notes that in the final "prayer for relief" section of his complaint, Plaintiff requests for the first time the additional relief of an injunction against 26 U.S.C. § 5822, which establishes registration and application requirements for the making of such weapons.[168]

---

158. *Id.*

159. *Id.*

160. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

161. *Moore v. Metro. Human Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at *2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

162. *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004).

163. *Id.*

164. Rec. Doc. 1 at 1.

165. *Id.* at 16–19.

166. *Id.* at 16–17.

167. *Id.* at 17–19.

168. *Id.* at 19–20.

While Plaintiff did not directly assert a cause of action challenging 26 U.S.C. § 5822, because Plaintiff is proceeding *pro se*, the Court will assume Plaintiff intended to bring a claim challenging 26 U.S.C. § 5822. Moreover, because the Government has argued that "none of [Plaintiff's] claims have legal merit ... [and] [t]he Court should therefore dismiss this case in its entirety," the Court will consider whether Plaintiff has failed to state a claim challenging 26 U.S.C. § 5822 pursuant to Rule 12(b)(6) as well.

The Government asserts that Plaintiff's claims should be dismissed on two grounds: first, because Plaintiff lacks standing to assert three of his claims pursuant to Federal Rule of Civil Procedure 12(b)(1); and second, because Plaintiff has failed to state any claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[169]

### 1. Whether Plaintiff has standing to bring three of his six claims

First, the Government argues that Plaintiff lacks standing to bring three of his six claims.[170] In particular, the Government asserts that: (1) Plaintiff cannot show redressability or traceability to challenge 18 U.S.C. § 922(*o*), the GCA's ban on machine guns, because Louisiana law also prohibits the possession of machine guns; and (2) Plaintiff cannot show an injury-in-fact for his challenges to 26 U.S.C. § 5811 and § 5812, the NFA's application and tax requirements on trans-

fers of certain weapons, as Plaintiff has not alleged that he wishes to transfer a firearm.[171] In response, Plaintiff argues: (1) that if he succeeds in striking down the federal ban on machine guns on Second Amendment grounds, he can then possess a machine gun in areas outside Louisiana and immediately move to strike down the Louisiana ban on the same grounds;[172] and (2) that, even though Plaintiff has not alleged that he wants to transfer a firearm, he has still suffered an injury-in-fact because a transferee must be identified in the transfer application, must provide a photograph and fingerprints, and must wait until the application is approved, and because the costs of the $200 tax paid by the transferor will ultimately be paid for by the transferee.[173]

#### a. Plaintiff's standing to challenge Section 922(o)

As stated *supra*, 18 U.S.C. § 922(*o*) makes it unlawful to transfer or possess any machine gun manufactured after May 19, 1986.[174] In addition, Louisiana Revised Statute § 40:1752 makes it unlawful for any person to "sell, keep or offer for sale, loan or give away, purchase, possess, carry, or transport any machine gun within this state," with limited exceptions. Here, the Government does not appear to contest that Plaintiff can establish the first element of standing, injury-in-fact, to challenge Section 922(*o*), as it is undisputed that he is barred from possessing a machine gun.[175] Rather, the Government av-

---

**169.** Rec. Doc. 8–1 at 1, 6, 9.

**170.** *Id.* at 6.

**171.** *Id.* at 6–8.

**172.** Rec. Doc. 9 at 4.

**173.** *Id.* at 3; Rec. Doc. 17 at 7–8.

**174.** *See generally United States v. Ardoin*, 19 F.3d 177, 182 (5th Cir. 1994) ("Section 922(*o*)

of the Firearm Owners' Protection Act (FOPA) prohibits a private citizen from possessing or transferring a machine gun that was not made and registered before May 19, 1986, unless such transfer or possession is authorized by federal or state governments or their departments or agencies.").

**175.** *Hollis*, 827 F.3d at 442 (noting that the district court found an injury where the plaintiff was barred from possessing a machine gun).

ers that, because Louisiana law prohibits the same conduct that federal law prohibits, Plaintiff cannot prove traceability (the second standing element) or redressability (the third standing element).[176] In *Hollis v. Lynch*, the Fifth Circuit reviewed a district court's finding that a plaintiff lacked standing to challenge 18 U.S.C. § 922(*o*) because an existing Texas statute prohibiting the possession or manufacture of a machine gun would also bar the plaintiff's claim.[177] There, Texas Penal Code § 46.05(a)(1)(A)–(B) provided:

> (a) A person commits an offense if the person intentionally or knowingly possesses, manufactures, transports, repairs, or sells:
>
> (1) any of the following items, unless the item is registered in the National Firearms Registration and Transfer Record maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives . . .:
>
> (A) an explosive weapon; [or]
>
> (B) a machine gun.[178]

The Fifth Circuit "disagree[d] with the district court that the Texas statute moots the federal claim." [179] The Fifth Circuit noted that the Second Amendment applies with equal force to the states, and held that, if Section 922(*o*) was found to be unconstitutional, "it is likely that Section 46.05, a state law, would also be unconstitutional." [180] The Fifth Circuit further acknowledged that striking down the federal ban would likely put plaintiff in compliance with Texas state law, as it is contingent on whether the plaintiff could obtain federal

approval of an application to make a machine gun.[181]

Here, unlike the Texas state law in *Hollis*, the Louisiana state law banning possession of machine guns is not contingent on the federal application process.[182] However, because a ruling that finds Section 922(*o*) to be unconstitutional under the Second Amendment would mean that Louisiana's state ban would "likely" also be unconstitutional,[183] the Court finds that, under the Fifth Circuit's reasoning in *Hollis*, Plaintiff has standing to challenge 18 U.S.C. § 922(*o*).

### b. Plaintiff's standing to challenge 26 U.S.C. § 5811 and § 5812

Next, the Government argues that Plaintiff has failed to show injury-in-fact to establish standing to challenge 26 U.S.C. § 5811 and § 5812.[184] The Government asserts that these federal statutes only impose registration requirements and the payment of a $200 tax on prospective *transferors* on certain firearms, whereas Plaintiff has only alleged that he seeks to have certain firearms be transferred to him.[185] Moreover, the Government avers that Plaintiff has not pointed to any basis for his assertion that the tax paid by transferors would be passed on to him, and that Plaintiff has not alleged how providing identifying information for a firearm transfer application would burden his Second Amendment rights.[186] In response, Plaintiff argues that he has sufficiently alleged an injury-in-fact, as: (1) he must provide a photograph and fingerprints for the trans-

---

176. Rec. Doc. 8–1 at 7–8.

177. *Hollis*, 827 F.3d at 442.

178. *Id.* (quoting Tex. Penal Code § 46.05(a)(1)(A)–(B)).

179. *Id.*

180. *Id.*

181. *Id.*

182. *See* La. Rev. Stat. § 40:1752.

183. *Hollis,* 827 F.3d at 442.

184. Rec. Doc. 8–1 at 6.

185. *Id.*

186. Rec. Doc. 13 at 3.

fer application; (2) the cost of the $200 tax will be passed on to him as the transferee; (3) he is directly affected because he cannot obtain a transferred firearm unless and until he receives approval from the federal government, thus restricting his access to firearms and his rights under the Second Amendment; and (4) the significant delay between submitting an application and receiving approval further burdens his Second Amendment rights.[187]

Title 26 U.S.C. § 5811 provides that for every firearm transferred, a $200 tax must be paid "by the transferor." Title 26 U.S.C. § 5812(a) establishes that a firearm shall not be transferred unless: (1) "the transferor of the firearm" files a written application for the transfer and registration of the firearm to the transferee; (2) the application must include evidence that any tax payable on the transfer has been paid by affixing the proper stamp to the application form; (3) the transferee is identified in the application, and the identification must include the transferee's fingerprints and photograph; (4) the transferor is identified in the application; (5) the firearm is identified in the application; and (6) the application form shows that the Secretary of the Treasury has approved the transfer and the registration of the firearm to the transferee. Title 26 U.S.C. § 5812(b) further provides that the transferee of a firearm may not take possession of the firearm unless the Secretary has approved the transfer and registration of the firearm to the transferee as required by Section 5812(a).

■ Here, Plaintiff does not allege that he wishes to transfer a firearm to another individual or that any application to transfer a firearm to him has been filed. Instead, Plaintiff only argues that, as a prospective transferee seeking to obtain a firearm via transfer in the future, he has standing to challenge 26 U.S.C. § 5811 and § 5812. However, neither statute imposes any obligations or requirements on the recipient of a transferred weapon; rather, both statutes clearly state that the "transferor" must pay a $200 tax and file a written application to transfer and register the firearm.[188] In order to have standing under Article III, the plaintiff must show he has a "personal stake" in the dispute, and that the injury alleged in the complaint is concrete and particularized as to him, rather than merely conjectural or hypothetical.[189] As stated *supra*, the burden to prove that jurisdiction exists is on Plaintiff.[190] Here, Plaintiff has not sufficiently alleged how these laws directed to transferors impose an obligation on *potential transferees*, and Plaintiff has not articulated how the requirements that another individual pay a tax and provide information about Plaintiff violate his Second Amendment rights or otherwise impose a concrete and particularized injury on him.

Moreover, the Court notes that neither 26 U.S.C. § 5811 or § 5812 act as an absolute prohibition on transferring firearms as Plaintiff desires, but rather establish an approval and taxation process which would allow transfers of firearms to Plaintiff once

187. *See* Rec. Doc. 9 at 2–3; Rec. Doc. 17 at 6–8.

188. 26 U.S.C. § 5811; 26 U.S.C. § 5812.

189. *Id.* at 819 (citing *Lujan,* 504 U.S. at 560–561, 112 S.Ct. 2130); *see also Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 543–544, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (holding that a member of the school

board who "has no personal stake in the outcome of the litigation" had no standing).

190. *Ramming,* 281 F.3d at 161 (citing *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980)); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (plaintiff bears burden of establishing standing).

the requirements are satisfied by the transferor. In *National Rifle Association of America, Inc. v. McCraw*, the Fifth Circuit considered whether 18–to–20–year–old plaintiffs had standing to challenge a concealed handgun licensing law and the accompanying criminal law banning carrying a handgun in public.[191] There, the Fifth Circuit held that the plaintiffs had standing, as the criminal statute "forbids them from carrying a handgun altogether" and the licensing program "declines to grant their age group, specifically, a limited exception in the form of a concealed handgun license from this alleged burden on their Second Amendment rights." [192] "Thus, both laws, as part of a statutory scheme, combine to deprive plaintiffs of their alleged constitutional rights." [193] Here, by contrast, the challenged statutes do not forbid Plaintiff from being transferred a firearm altogether, but instead establish a regulatory application and taxation scheme to oversee the lawful transfer of firearms between individuals.

The Fourth Circuit's reasoning in *Lane v. Holder* provides additional support for the Court's analysis here. In *Lane v. Holder*, the Fourth Circuit considered whether plaintiffs who desired to acquire handguns out-of-state had standing to challenge the GCA's provision requiring interstate transfers of firearms to take place through federal firearm licensees ("FFLs").[194] The Fourth Circuit rejected the plaintiffs' argument that restricting the range of retailers available was sufficient to establish an injury-in-fact, and instead held that the plaintiffs lacked standing because the laws applied to the FFLs rather than to the handgun purchasers.[195] The Fourth Circuit noted that the plaintiffs were not prevented from obtaining the handguns, and "[a]t worst, they are burdened by additional costs and logistical hurdles." [196] The Fourth Circuit held that "minor inconveniences are distinct" from those cases where plaintiffs were "prevented outright from obtaining or possessing firearms." [197] Thus, unlike the Fifth Circuit's holding in *National Rifle Association of America, Inc.*, where a 20–year–old was found to have standing because he was absolutely barred from buying firearms from FFLs, the plaintiffs in *Lane* were able to obtain out-of-state firearms, as long as they went through an FFL to do so. Similarly here, Plaintiff is not absolutely barred from being transferred a firearm, but may receive a firearm if the transferor satisfies the provisions' requirements.

Finally, the Court notes that Plaintiff has not alleged that an application to transfer a firearm to him was filed or rejected, or that Plaintiff faces any imminent threat of prosecution for failing to comply with either statute.[198] In *Westfall v. Miller*, the Fifth Circuit considered wheth-

191. 719 F.3d 338, 345 (5th Cir. 2013).

192. *Id.*

193. *Id.*

194. 703 F.3d 668, 671–72 (4th Cir. 2012).

195. *Id.* at 672.

196. *Id.* at 672–73.

197. *Id.* at 673.

198. While Plaintiff mentions that transferring a firearm in violation of the GCA provisions could subject him to criminal penalties, the mere fact that a statute is enforced through criminal sanctions is insufficient to establish standing. *See, e.g., Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.") (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)); *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 547 (5th Cir. 2008) ("Although a plaintiff need not expose himself to actual arrest or prosecution in order to challenge a statute for infringing con-

er a plaintiff had standing to challenge an ATF requirement that a local law enforcement official must certify that the official has no knowledge that the firearm will be used for an unlawful purpose.[199] The district court found that, because the plaintiff had not pursued certification from all specified persons after being denied approval by some of them, the plaintiff lacked standing.[200] The Fifth Circuit agreed, and held that "[j]ust because [the plaintiff] does not like the firearms regulation does not give him standing to complain about its legality."[201] The Fifth Circuit determined that the plaintiff "made no effort to obtain certifications from" other acceptable local officials, and therefore it "can only conclude that his inaction has caused any inju-

ry he has suffered."[202] Here, Plaintiff's claims are even more attenuated, as Plaintiff has not alleged that any application was ever filed or denied.[203]

Likewise, the Second Circuit has held that, "[a]s a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy."[204] For example, in *United States v. Decastro*, the Second Circuit held that a plaintiff who fails to apply for a gun license lacks standing to challenge those state licensing laws.[205] According to the Second Circuit, a plaintiff may only challenge licensing laws without first submitting an application if he can make a "substantial showing" that submitting an application "would have been futile."[206]

stitutional rights, the plaintiff must be seriously interested in disobeying the statute."); *Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006) ("Standing to challenge the constitutionality of a penal statute or the like requires 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there [must be] a credible threat of prosecution thereunder.' ") (quoting *Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301).

199. 77 F.3d 868, 869 (5th Cir. 1996).

200. *Id.* at 870–71.

201. *Id.* at 870.

202. *Id.* at 872.

203. Additionally, the Court notes that, in a *per curiam* opinion, the Fifth Circuit addressed the question of whether a plaintiff who sought a concealed handgun permit and submitted an incomplete application had standing to assert that the underlying Louisiana statute was unconstitutional. *Osterweil v. Edmonson*, 424 Fed.Appx. 342, 343–44 (5th Cir. 2011). In *Osterweil*, the plaintiff challenged certain state law provisions requiring the applicant to pay a $100 application fee and an additional $50 fee for individuals who had resided outside Louisiana in the past fifteen years, as well as a provision requiring applicants to hold harmless and indemnify the state for any liability arising out of issuing the permit. *See*

*Osterweil v. Edmondson*, No. 10-398, 2010 WL 4056310, at *1 (M.D. La. Oct. 13, 2010). The district court found that the plaintiff lacked standing, because he had not enclosed the applicable $50 fee and was not denied a permit, but rather had his application returned for incompleteness. *Id.* at *2. The Fifth Circuit affirmed the district court's decision in an unpublished opinion, as "Louisiana has not yet applied its regulations to deny [the plaintiff] the right to possess a concealed handgun." *Osterweil*, 424 Fed.Appx. at 343. The Fifth Circuit noted that the plaintiff had only submitted an incomplete permit application and did not pursue the matter further, and that he had not alleged that he carried a concealed weapon or was threatened with prosecution. *Id.* The Fifth Circuit further held that the plaintiff had not shown a credible threat of prosecution to confer standing, as the record "does not allow Osterweil's bald claim to rise above the level of speculation or conjecture." *Id.* at 344. Pursuant to Fifth Circuit Rule 47.5.4, unpublished opinions are not precedent.

204. *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012).

205. *Id.*

206. *Id.* See generally *Jackson–Bey v. Hanslmaier*, 115 F.3d 1091, 1098 (2d Cir. 1997) (finding that an inmate who failed to register

In support of this interpretation, the Second Circuit in· *Decastro* pointed out that in *Moose Lodge No. 107 v. Irvis*, the Supreme Court held that an African–American who never actually applied for membership to the Moose Lodge lacked standing to challenge the club's all-white membership requirement.[207] In , *Moose Lodge No. 107*, the Supreme Court clearly stated that the plaintiff "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others." [208] Similarly, in *Allen v. Wright*, the Supreme Court held that plaintiffs, parents of children who had never applied for admission to private schools with allegedly racially .discriminatory admissions policies, had no standing to challenge the tax-exempt status of those private schools.[209] This Court further notes that the Eighth Circuit, Ninth Circuit, and the D.C. Circuit have also concluded that a plaintiff who failed to submit required applications or filings in other contexts lacked standing to challenge the requirements.[210]

Here, Plaintiff challenges two federal laws that only impose obligations on trans-ferors of firearms, whereas Plaintiff seeks to have a firearm transferred to him. Moreover, Plaintiff has not alleged an application to transfer was ever filed or rejected. The Court finds that such speculative and conjectural allegations of· injury are insufficient to establish a case or controversy under Article III. The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and· seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." [211] As the Fifth Circuit has made clear, "[t]he requirements of Article III are not satisfied merely because a party requests a court of the United States to declare its legal rights." [212] Accordingly, the Court concludes that Plaintiff has not sufficiently alleged the injury-in-fact requirement and lacks standing under Article III of the United States Constitution to pursue this claim challenging the NFA's registration and taxation requirements for transfers of firearms.[213] Therefore, the Court will grant

his religion as required lacked standing to bring a First Amendment claim "because registration is a reasonable standing threshold and because Jackson–Bey 'failed to register and has not made a substantial showing that registration would be futile.").

**207.** 407 U.S. 163, 167–68, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

**208.** *Id.* at 166, 92 S.Ct. 1965.

**209.** 468 U.S. 737, 755, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

**210.** *See, e.g., Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) ("There is a long line of cases, however, that hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit."); *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 56 (D.C. Cir. 1991) (plaintiffs lacked standing to challenge failure to extend Indian hiring preferences into job categories for which they never formally applied); *Oil, Chemical & Atomic Workers Int'l Union v. Gillette Co.*, 905 F.2d 1176, 1177 (8th Cir. 1990) (employee who has not filed benefits claim lacks standing to challenge employer's retirement policy);

**211.** *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74,· 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

**212.** *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 546 (5th Cir. 2008) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

**213.** *See generally Oster v. City of New Orleans, By & Through Morial.*, 631 F.2d 71, 72 (5th Cir. 1980) (holding that plaintiffs who did not

the Government's motion to dismiss Plaintiff's challenges to 26 U.S.C. § 5811 and § 5812 for lack of standing pursuant to Rule 12(b)(1).[214]

## 2. Whether the challenged provisions of the GCA and NFA violate the Second Amendment

The Government argues that this Court should dismiss Plaintiff's claims under the Second Amendment against certain provisions of the GCA and NFA pursuant to Rule 12(b)(6), because, the Government avers, the provisions do not infringe on Plaintiff's Second Amendment rights.[215] According to the Government, the Fifth Circuit applies a two-step analysis for Second Amendment challenges.[216] The Government argues that Plaintiff's challenge fails at the first step of the analysis because it is clear that the longstanding, presumptively lawful regulations of the GCA and NFA do not fall within the scope of the Second Amendment.[217] The Government asserts that the Second Amendment does not confer the right to possess a silenced, short-barreled machine gun.[218] Even if the GCA and NFA provisions did implicate Second Amendment rights, the Government contends that the law should still be upheld under the second step of the analysis, as the Court should only apply intermediate scrutiny and find that there is a reasonable fit between the challenged regulation and an important government objective.[219]

Plaintiff argues in response that the Second Amendment extends to all instruments that constitute bearable arms.[220] Plaintiff avers that the Supreme Court held in *Miller* that the Second Amendment protects those arms that are used as "ordinary military equipment" or ones that "could contribute to the common defense."[221] Plaintiff argues that short-barreled machine guns are in "common use," as the Government uses them to equip law enforcement officers and members of the military.[222] Plaintiff further avers that silenced, short-barreled machine guns are the "most effective weapons for defense of hearth and home."[223] Plaintiff argues that the GCA and NFA place Plaintiff at a disadvantage to criminals who do not follow the law and can easily arm themselves with the types of weapons Plaintiff seeks.[224] Plaintiff argues that the Govern-

have criminal charges pending against them did not have standing to attack a provision denying licenses to applicants with criminal charges pending against them); *Pollard v. Cockrell*, 578 F.2d 1002, 1006 (5th Cir. 1978) (concluding that plaintiffs who did not show they intended to patronize a massage parlor in the future lacked standing to challenge ordinances regulating such establishments).

**214.** Moreover, the Court notes that its analysis and findings discussed *infra* regarding Plaintiff's challenge to 26 U.S.C. § 5821 and § 5822's nearly identical taxation and registration requirements on the making of certain firearms would equally apply to these provisions establishing taxation and registration requirements on the transfers of certain firearms. Thus, even if Plaintiff had standing to challenge 26 U.S.C. § 5811 and § 5812, his claims would be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**215.** Rec. Doc. 8–1 at 1–2.

**216.** *Id.* at 9 (citing *NRA v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 194–95 (5th Cir. 2012)).

**217.** *Id.* at 9–12.

**218.** *Id.*

**219.** *Id.* at 12–13.

**220.** Rec. Doc. 9 at 5–6.

**221.** *Id.* at 7 (quoting *United States v. Miller*, 307 U.S. 174, 178, 59 S.Ct. 816, 83 L.Ed. 1206 (1939)).

**222.** *Id.* at 9.

**223.** *Id.* at 10.

**224.** *Id.* at 11.

ment's laws restricting the use of certain arms that would be used in defense of hearth and home are subject to strict scrutiny.[225] However, Plaintiff asserts that, under any standard of scrutiny that the Court may apply, these provisions under the GCA and NFA cannot pass constitutional muster.[226]

 The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[227] The Fifth Circuit employs a two-step inquiry to analyze challenges under the Second Amendment:

[T]he first step is to determine whether the challenged law impinges upon a right protected by the Second Amendment—that is, whether the law regulates conduct that falls within the scope of the Second Amendment's guarantee; the second step is to determine whether to apply intermediate or strict scrutiny to the law, and then to determine whether the law survives the proper level of scrutiny.[228]

Thus, the first question the Court must consider is whether the challenged provisions of the GCA and NFA regulate conduct that falls within the scope of the rights protected by the Second Amendment. If the Court finds in the affirmative, the Court must then address the second step in the Fifth Circuit's two-step inquiry: "whether to apply intermediate or strict scrutiny to the law, and then to determine whether the law survives the

proper level of scrutiny."[229] The appropriate level of scrutiny "depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right."[230] When a regulation "threatens a right at the core of the Second Amendment," such as the right to possess and use a handgun to defend the home, courts should apply strict scrutiny.[231] Less severe regulations that do not encroach on the core of the Second Amendment are reviewed under the more lenient "intermediate" scrutiny, which requires the government to demonstrate that there is a "reasonable fit" between the regulation and an "important" government objective.[232]

### a. Whether Title 18 U.S.C. § 922(o) violates the Second Amendment

First, Plaintiff argues that 18 U.S.C. § 922(o)'s ban on machine guns violates his rights pursuant to the Second Amendment.[233] In *United States v. Miller*, the Supreme Court held that the NFA's prohibition on transporting unregistered "sawed-off shotguns" was constitutional under the Second Amendment.[234] The Supreme Court noted that there was no evidence that possession or use of a sawed-off shotgun "has some reasonable relationship to the preservation or efficiency of a well regulated militia" or "that this weapon is any part of the ordinary military equipment or . . . could contribute to the common defense."[235]

Nearly 70 years after *Miller*, the Supreme Court explored the scope and

225. *Id.* at 13.

226. *Id.* at 12–13.

227. U.S. Const. amend. II.

228. *Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d at 194.

229. *Id.*

230. *Id.* at 195 (citations omitted).

231. *Id.* (citations omitted).

232. *Id.* (citations omitted).

233. Rec. Doc. 1 at 16–17.

234. *Miller*, 307 U.S. at 174, 59 S.Ct. 816.

235. *Id.* at 178, 59 S.Ct. 816.

meaning of the Second Amendment in greater depth in *District of Columbia v. Heller*.[236] In *Heller*, the Supreme Court held that the Second Amendment was intended to protect a pre-existing individual right to keep and bear arms.[237] As the Fifth Circuit has noted, the Supreme Court made clear in *Heller* that, while preserving the effectiveness of militias was one goal of the Framers, the primary purpose of the Second Amendment was to "guarantee the individual right to possess and carry weapons in case of confrontation" and establish "an individual right to bear arms for defensive purposes."[238] In *Heller*, the Supreme Court reasoned that because the Second Amendment was focused on the right to defend one's "hearth and home," and because "the American people have considered the handgun to be the quintessential self-defense weapon[,] ... a complete prohibition of their use" was unconstitutional.[239] However, *Heller* also established that "[l]ike most rights, the right secured by the Second Amendment is not unlimited."[240] The Supreme Court acknowledged that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions" of certain "presumptively lawful" prohibitions and limitations on the possession of firearms.[241]

In *Hollis v. Lynch*, the Fifth Circuit considered whether, pursuant to the Supreme Court's reasoning in *Heller*, the GCA's prohibition on possessing machine guns (Title 18 U.S.C. § 922(*o*)) unconstitutionally infringed on the Second Amendment.[242] In *Hollis*, the Fifth Circuit rejected the plaintiff's argument that *Miller* stands for the proposition that the Second Amendment establishes a right to possess weapons that are part of the modern day ordinary military equipment, such as an M–16.[243] The Fifth Circuit held that *Heller* rejected this interpretation of *Miller*, as machine guns were being used in warfare in 1939 when the Supreme Court upheld the NFA's restrictions on such weapons in *Miller*.[244] The Fifth Circuit noted that the Supreme Court had acknowledged that a "traditional militia" was "a pool of men bringing arms in common use at the time for lawful purposes like self-defense" using "the sorts of lawful weapons that they possessed at home."[245]

Accordingly, in *Hollis*, the Fifth Circuit interpreted the Supreme Court's holdings in *Miller* and *Heller* to mean that the individual right established by the Second Amendment only protects the category of weapons that are "possessed at home" and are in "common use at the time for lawful purposes like self-defense," and not those weapons that may be useful for military service.[246] The Fifth Circuit pointed out that the Supreme Court held that there was a historical tradition of prohibiting "dangerous and unusual weapons," and noted that modern militias, such as the National Guard, would require "sophisti-

**236.** *District of Columbia v. Heller*, 554 U.S. 570, 592, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

**237.** *Id.*

**238.** *Id.* at 592, 599, 602, 128 S.Ct. 2783. *See Hollis v. Lynch*, 827 F.3d 436, 444 (5th Cir. 2016).

**239.** *Heller*, 554 U.S. at 629, 635, 128 S.Ct. 2783.

**240.** *Id.* at 626, 128 S.Ct. 2783.

**241.** *Id.* at 626–27 & n.26, 128 S.Ct. 2783.

**242.** *Hollis*, 827 F.3d at 436.

**243.** *Id.* at 445.

**244.** *Id.* (citing *Heller*, 554 U.S. at 624, 128 S.Ct. 2783).

**245.** *Id.* (citing *Heller*, 554 U.S. at 625, 128 S.Ct. 2783).

**246.** *Id.*

cated arms that are highly unusual in society at large." [247] Therefore, the Fifth Circuit held that protected weapons are "those in common use at the time," and that, if a weapon is dangerous and unusual, it is not in common use and is not protected.[248] Likewise, the Fifth Circuit pointed to the Supreme Court's decision in *Caetano v. Massachusetts*, where the Supreme Court rejected the argument that stun guns are not protected by the Second Amendment because they are not commonly used in the military.[249] Thus, the Fifth Circuit found that "whether a weapon has a nexus to military utility is not the test as to whether that weapon receives Second Amendment protection." [250]

The Fifth Circuit, applying its two-step inquiry for Second Amendment challenges, ultimately held in *Hollis* that bearing an M–16 machine gun did not fall within the scope of the Second Amendment right, and thus Section 922(*o*) was constitutional.[251] The Fifth Circuit found that a "dangerous and unusual" firearm is not "in common use," and that both the majority and dissent in *Heller* had identified the M–16 as a dangerous and unusual weapon.[252] Accordingly, the Fifth Circuit in *Hollis* found that machine guns do not receive Second Amendment protection, and thus upheld 18 U.S.C. § 922(*o*) at step one of its framework, affirming the district court's decision to grant a motion to dismiss.[253]

Similarly, in *United States v. Golding*, the Fifth Circuit held that violating Section 922(*o*) by possessing a machine gun was a "crime of violence," as it "constitutes conduct that presents a serious risk of physical injury to another" due to the "inherently dangerous nature of machine guns." [254] Likewise, in *United States v. Jennings*, the Fifth Circuit noted that machine guns and pipe bombs were both "primarily weapons of war and have no appropriate sporting use or use for personal protection." [255]

■ Here, Plaintiff argues that Section 922(*o*)'s ban on machine guns is unconstitutional.[256] However, Plaintiff has not identified any rationale to distinguish his case from *Hollis* or articulated any new argument as to why the Fifth Circuit's decision in *Hollis* upholding 18 U.S.C. § 922(*o*) does not apply here. Rather, Plaintiff relies in large part on the very same argument that the *Heller* and *Hollis* courts rejected: that, because machine guns are used by military and law enforcement, private citizens must also have a right to possess such weapons.[257] The Court finds this argument unpersuasive pursuant to the Fifth Circuit's analysis in *Hollis*, where the Fifth Circuit explicitly determined that "dangerous and unusual" weapons such as machine guns are not in common use and thus not protected by the Second Amendment.[258]

247. *Id.*

248. *Id.* at 446 (citing *Heller*, 554 U.S. at 627, 128 S.Ct. 2783).

249. *Id.* (citing *Caetano v. Massachusetts*, —— U.S. ——, 136 S.Ct. 1027, 194 L.Ed.2d 99 (2016)).

250. *Id.*

251. *Id.* at 447.

252. *Id.*

253. *Id.* at 451.

254. *United States v. Golding*, 332 F.3d 838, 840 (5th Cir. 2003); *see also Hollis*, 827 F.3d at 448 (discussing *Golding*).

255. *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999); *see also Hollis*, 827 F.3d at 448 (discussing *Jennings*).

256. Rec. Doc. 1 at 16.

257. *See* Rec. Doc. 9 at 6–11.

258. *See Hollis*, 827 F.3d at 446 ("If a weapon is dangerous and unusual, it is not in common use and not protected by the Second Amendment.").

Plaintiff appears to further argue that Section 922(o) is unconstitutional because its ban on machine guns places him at a disadvantage when defending his home against criminals who do not follow the law and can easily arm themselves with the types of weapons that Plaintiff seeks.[259] However, the Court notes that this legislation was passed to prevent any person from obtaining these weapons, and criminals who have machine guns banned under 18 U.S.C. § 922(o) do not have them lawfully.[260] Moreover, Plaintiff has pointed to no authority to support the proposition that the scope of the Second Amendment is determined by the existence of violations against the challenged law regulating firearms, or that an otherwise "dangerous and unusual" firearm can receive Second Amendment protection if it could be used by criminals. Indeed, the Fifth Circuit in *Hollis* noted that it has considered weapons such as machine guns, pipe bombs, and hand grenades to be "dangerous," and thus likely unprotected under the Second Amendment,[261] despite the fact that criminals could acquire each of those weapons in violation of the law.

Finally, Plaintiff avers that Title 922(o) is unconstitutional under the Second Amendment because silenced, short-barreled machine guns are the most effective weapons for self-defense of the home.[262] However, neither *Heller* nor *Hollis* stands for the proposition that the effectiveness of a weapon determines whether there is a right to bear it under the Second Amendment. Indeed, the Fifth Circuit determined in *Hollis* that the dangerousness of a firearm weighs *against* finding that the Second Amendment establishes a right to bear such weapons appears to undercut Plaintiff's argument.[263] The *Hollis* court made clear that courts must consider whether the weapon is one "in common use at the time" to determine if it receives Second Amendment protections, not whether it is the most efficient means of eliminating targets indoors.[264] As previously stated, the Fifth Circuit concluded that a firearm is not "in common use" if it is "dangerous and unusual," and that machine guns thus do not receive Second Amendment protections.[265] Moreover, the Court notes that in *Heller*, the Supreme Court considered and rejected the argument that effective, sophisticated arms are required for a militia to be as effective as militias in the 18th century. Plaintiff has not articulated any rationale or cited any authority to differentiate his claim here from the *Hollis* or *Heller* courts' decisions.[266]

Accordingly, considering the first step in the Fifth Circuit's two-step analysis for Second Amendment claims and in light of the Fifth Circuit's analysis in *Hollis*, this Court finds that 18 U.S.C. § 922(o) does

259. *Id.* at 11.

260. *See* Pub. L. 90–618, 82 Stat. 1213–14 (stating that an objective of the GCA was "to provide support of Federal, State, and local law enforcement officials in their fight against crime and violence.").

261. *Id.* at 448.

262. Rec. Doc. 9 at 10.

263. *See Hollis*, 827 F.3d at 448. In particular, the Court notes that, if Plaintiff were correct that the Second Amendment protects the most effective or efficient means of self-defense or defense of the home, it could result in greater protections for "effective" but highly dangerous weapons that have long been considered beyond the scope of the Second Amendment, such as certain bombs and explosives.

264. *Id.* at 447.

265. *Id.* at 447–451.

266. *Heller*, 554 U.S. 570, 627, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

not "impinge[ ] upon a right protected by the Second Amendment." [267] That is, because "a law that regulates a class of weapons that are not in common use will be upheld at step one," such as machine guns, the Court finds that Section 922(o) "passes constitutional muster." [268] Thus, the Court will grant the Government's motion to dismiss Plaintiff's Second Amendment challenges to 18 U.S.C. § 922(o) pursuant to Federal Rule of Civil Procedure 12(b)(6).

### b. Whether Title 18 U.S.C. § 922(l) and § 922(r) violate the Second Amendment

Plaintiff also brings a Second Amendment challenge to two other provisions of the GCA: 18 U.S.C. § 922(l), which bans the importation of any firearm or ammunition, subject to certain exceptions listed under 18 U.S.C. § 925(d); [269] and (2) 18 U.S.C. § 922(r), which forbids assembling any semiautomatic rifle or shotgun from imported parts, with limited exceptions. The Government argues that Plaintiff's claims challenging Sections 922(l) and (r) should be dismissed because there is no right to possess a silenced, short-barreled machine gun, and thus there cannot be a right to transfer, make, or import such a weapon. [270] The Government points out that the GCA is a longstanding, presumptively lawful measure, which supports the holding that it does not implicate Second Amendment rights. [271] In response, Plaintiff asserts the same arguments discussed supra: that Heller established that the Sec-

ond Amendment extends, prima facie, to all instruments that constitute bearable arms, and that silenced, short-barreled machine guns are the most effective weapons for defense of hearth and home. [272]

As a preliminary matter, the Court notes that, while the Government focuses on Plaintiff's desire to obtain or create a silenced, short-barreled machine gun, Plaintiff also alleges in his complaint that he "wishes to obtain weapons that are part of the ordinary military equipment" for use in the militia or for personal defense that is prevented or hindered by the challenged provisions of the GCA and NFA. [273] Therefore, while the Court found supra that Plaintiff does not have a Second Amendment right to machine guns, the Court will now consider whether Sections 922(l) and (r)'s broader prohibitions on imported firearms and ammunition violate the Second Amendment.

■■■ Using the Fifth Circuit's two-step inquiry, the Court will first determine "whether the challenged law[s] impinge[ ] upon a right protected by the Second Amendment—that is, whether the law[s] regulate[ ] conduct that falls within the scope of the Second Amendment's guarantee." [274] To decide if a law implicates a Second Amendment right, courts must look to "whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." [275] As discussed above, the Supreme Court held in Heller that, while there is a pre-existing

---

**267.** *Id.* at 446–47.

**268.** *Id.*

**269.** 18 U.S.C. § 925(d) permits the Attorney General to authorize the importation of a firearm or ammunition for certain private uses, including scientific, research, and sporting purposes, as well as to use as museum pieces.

**270.** Rec. Doc. 8–1 at 11.

**271.** *Id.*

**272.** Rec. Doc. 9 at 9–10.

**273.** Rec. Doc. 1 at 1.

**274.** *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012).

**275.** *Id.*

individual right to keep and bear arms, the "right secured by the Second Amendment is not unlimited."[276] The Supreme Court further noted that "nothing in our opinion should be taken to cast doubt on long-standing prohibitions on the possession of firearms by felons and the mentally ill ... or *laws imposing conditions and qualifications on the commercial sale of arms.*"[277]

It is unclear if, under existing Fifth Circuit precedent, federal laws banning the importation of firearms and ammunition and prohibiting the use of imported parts to assemble a firearm would be considered "longstanding" and, if so, whether it would pass step one of the Fifth Circuit's two-step analysis. As the Fifth Circuit previously noted, it is ambiguous from the holding in *Heller* whether those "long-standing" and "presumptively lawful regulatory measures" either (1) "presumptively fail to burden conduct protected by the Second Amendment," and thus do not proceed beyond step one; or if (2) they "presumptively trigger and pass constitutional muster under a lenient level of scrutiny" under step two of the analysis.[278] The Court notes that 18 U.S.C. § 922(*l*) and § 922(r) were first enacted as part of the GCA in 1968, and neither party has identified any earlier known provision complete-

ly prohibiting the importation of firearms.[279] As the Fifth Circuit has clarified, a regulation can be "longstanding" even if it was not in existence during the founding era, as *Heller* considered modern laws passed in the mid–20th century that banned felons and mentally ill persons from possessing firearms to be "longstanding."[280] Moreover, the Second Circuit has opined that the Supreme Court in *Heller* identified these regulations as presumptively lawful because "time, place and manner restrictions may not significantly impair the right to possess a firearm for self-defense, and may impose no appreciable burden on Second Amendment rights."[281]

However, as the Third Circuit has held, *Heller* should not be interpreted to stand for the proposition that all commercial regulations on the sale of firearms are outside the scope of the Second Amendment.[282] Thus, the Court notes that, although these federal laws only restrict the importation of firearms or the use of imported parts to assemble a firearm, such restrictions likely impinge on the rights of law-abiding, responsible citizens under the Second Amendment to possess and carry firearms because they inhibit the ability to acquire such weapons.[283] Accordingly, the Court will proceed to step two of the Fifth Circuit's two-step analysis.

**276.** *D.C. v. Heller*, 554 U.S. 570, 626, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

**277.** *Id.* at 626–27, 128 S.Ct. 2783 (emphasis added).

**278.** *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012).

**279.** As discussed *infra*, prior to the enactment of the GCA, federal agencies had at least some discretionary authority to limit firearm imports, but appear to have not regularly exercised it. *See* 114 Cong. Rec. 23,072 (1968) (statement of Rep. Frank J. Horton) (noting that agencies already had the power to prevent the importation of foreign weapons, but that agencies failed to exercise their discretion). Additionally, the Court notes that the

NFA, passed in 1934, included a ban on importing certain firearms, but excluded such weapons as pistols, revolvers, and rifles with a barrel of more than eighteen inches in length. *See* H.R. 9741, 73d Cong. (1934); H.R. Rep. No. 1444 (1934).

**280.** *Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d at 196–97.

**281.** *United States v. Decastro*, 682 F.3d 160, 165 (2d Cir. 2012).

**282.** *United States v. Marzzarella*, 614 F.3d 85, 92 & n.8 (3d Cir. 2010).

**283.** *See, e.g., Teixeira v. Cty. of Alameda*, 822 F.3d 1047, 1059 (9th Cir. 2016), *reh'g en banc granted*, 854 F.3d 1046 (9th Cir. 2016) (hold-

Under the second step in the Fifth Circuit's two-step inquiry, the Court must consider "whether to apply intermediate or strict scrutiny to the law," and then "determine whether the law survives the proper level of scrutiny." [284] The appropriate level of scrutiny "depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." [285] When a regulation "threatens a right at the core of the Second Amendment," such as the right to possess and use a handgun to defend the home, courts should apply strict scrutiny. [286] Less severe regulations that do not encroach on the core of the Second Amendment are reviewed under the more lenient "intermediate" scrutiny, which requires the government to demonstrate that there is a "reasonable fit" between the regulation and an "important" government objective. [287]

Here, the challenged federal laws banning the importation of firearms and ammunition and prohibiting the use of imported parts to assemble a firearm do not burden the central core of the Second Amendment guarantee, but instead limit one particular source to obtain firearms, *i.e.* imported parts and weapons. [288] Moreover, laws imposing conditions and qualifications on the commercial sale of arms generally were identified as longstanding presumptively lawful regulatory measures in *Heller*, [289] which the Fifth Circuit has held should merit, at most, intermediate scrutiny. [290] Other circuits have noted that strict scrutiny should only be applied to those restrictions that operate as a "substantial burden" on the core purposes of the rights established by the Second Amendment. [291] Accordingly, this Court will apply intermediate scrutiny here.

ing that there is "no question" that an ordinance limiting where a gun store may be located and "restricting the commercial sale of firearms would burden "he right of a law-abiding, responsible citizen to possess and carry a weapon, because it would inhibit his ability to acquire weapons") (citations and quotation marks omitted).

284. *Nat'l Rifle Ass'n of Am., Inc.,* 700 F.3d at 194.

285. *Id.* at 195 (citations omitted).

286. *Id.* (citations omitted).

287. *Id.* (citations omitted).

288. *See Nat'l Rifle Ass'n of Am., Inc.,* 700 F.3d at 205 (finding that a law prohibiting the commercial handgun sales to 18-to-20-year-olds only triggers intermediate scrutiny, as the ban "does not disarm an entire community" and was narrowly aimed at a discrete category of individuals).

289. *See Heller,* 554 U.S. at 626–27, 128 S.Ct. 2783; *Nat'l Rifle Ass'n of Am., Inc.,* 700 F.3d at 196.

290. *Nat'l Rifle Ass'n of Am., Inc.,* 700 F.3d at 196 ("Thus, even if such a [longstanding] measure advanced to step two of our framework, it would trigger our version of "intermediate" scrutiny.").

291. *See, e.g., United States v. Decastro,* 682 F.3d 160, 166 (2d Cir. 2012) ("Rather, heightened scrutiny is triggered only by those restrictions that (like the complete prohibition on handguns struck down in *Heller*) operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes)."); *Nordyke v. King,* 644 F.3d 776, 786 (9th Cir.) ("[O]nly regulations which substantially burden the right to keep and to bear arms trigger heightened scrutiny under the Second Amendment."), *reh'g en banc granted,* 664 F.3d 774 (9th Cir. 2011); *Heller v. District of Columbia,* 670 F.3d 1244, 1253, 1260 (D.C. Cir. 2011) (laws that have only a "de minimis" effect on the right to bear arms or that do not "meaningfully affect individual self-defense" do not impinge on the Second Amendment right and therefore do not warrant heightened scrutiny (internal quotation marks omitted)); *United States v. Marzzarella,* 614 F.3d 85, 94–95 (3d Cir. 2010) (suggesting that a "de minimis" burden on the right to keep arms for self-defense might not warrant heightened scrutiny).

As stated *supra*, a challenged law may survive intermediate scrutiny if there is a "reasonable fit" between the regulation and an "important" government objective.[292] Courts routinely look to the legislative history of a law challenged under the Second Amendment to aid their intermediate scrutiny inquiry.[293] According to the GCA's legislative history, the objective of the law was "to provide support of Federal, State, and local law enforcement officials in their fight against crime and violence," while avoiding "any undue or unnecessary" burdens on law-abiding citizens' ability to acquire, possess, or use firearms for lawful activities.[294] The legislative history reveals that Congress was centrally concerned with buttressing the states' individual efforts to curb "crime, delinquency, and violence"[295] and "keep firearms out of the hands of those not legally entitled to possess them" through a uniform firearm regulatory scheme at the federal level.[296] As the Supreme Court has recognized, the GCA "did not intend merely to restrict interstate sales but sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous. These persons are comprehensively barred by the Act from acquiring firearms by any means."[297] Congress noted that the existing federal firearm controls at the time were "not sufficient to enable the States to effectively cope with the firearms traffic within their own borders," especially in light of the "ease with which any person can anonymously acquire firearms."[298]

The Court further notes that an additional objective of Congress in imposing a complete ban on importing firearms was that, prior to the enactment of the GCA, executive agencies had the discretionary authority to limit certain firearm imports, but Congress determined that they had failed to effectively exercise it to limit the flow of imported firearms.[299] As one mem-

---

**292.** *Nat'l Rifle Ass'n of Am., Inc.,* 700 F.3d at 195.

**293.** *See id* at 207–08 (looking to the legislative record and history of a challenged law to determine what the government objectives were and whether a reasonable means-end fit exists); *see also Barrett v. United States,* 423 U.S. 212, 220, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976) (determining Congress's objectives in adopting 18 U.S.C. § 922(h) by looking to the legislative history); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw,* 719 F.3d 338, 348 (5th Cir. 2013) (considering the legislative record and a historical analysis to determine Texas's objectives in passing a gun control law); *United States v. Marzzarella,* 614 F.3d 85, 97 (3d Cir. 2010) (considering legislative intent to determine that 18 U.S.C. § 922(k) was constitutional under the Second Amendment). *See generally McCreary Cty., Ky. v. Am. Civil Liberties Union of Ky.,* 545 U.S. 844, 861, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005) (considering the "text, structure, purpose, and history" of a statute to determine if the government had a secular purpose in passing a law challenged under the First Amendment); *United States v. Kaluza,* 780 F.3d 647, 658 (5th Cir. 2015) (considering legislative history on a motion to dismiss to determine the meaning of a law when its plain text was ambiguous); *United States v. Richards,* 755 F.3d 269, 277 (5th Cir. 2014) (determining whether substantial government interests exist by considering the "plain language and the history and revisions" of a federal statute in a First Amendment challenge).

**294.** Pub. L. 90–618, 82 Stat. 1213–14.

**295.** *See* 114 Cong. Rec. 6,713 (1968) (statement of Senator Thomas J. Dodd).

**296.** *See* S. Rep. 1501, at 22 (1968) (discussing purpose of the GCA).

**297.** *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976).

**298.** *See* S. Rep. 1501, at 22 (1968).

**299.** *See* 114 Cong. Rec. 23,072 (1968) (statement of Rep. Frank J. Horton) (noting that agencies already had the power to prevent low-priced foreign weapons from being "dumped on the American market, available for purchase by practically anyone-criminal

ber of the House of Representatives stated at the time,[300] Congress's solution was to ban imported weapons entirely: "Because the discretionary measures given [to] the agencies have not been acted upon by them, we must take the steps of barring the weapons outright."[301] The representative further noted that stopping the "flood of inexpensive foreign weapons, most of which have little or no value to the sportsman," would allow Congress to "cut off a major source of weapons available to criminals."[302] Moreover, members of Congress opined that a complete ban was necessary to support a comprehensive national response: "Without stiff import controls that are strictly enforced, weapons which are even now illegal to import will continue to trickle in."[303] As the Government further points out, the GCA's prohibition on im-

porting firearms was also necessary to "ensure that criminals cannot bypass the NFA's registration requirements."[304]

Based on the above, the Court finds that important government objectives underlie Congress's decision to impose strict controls on the importation of firearms or the use of imported parts to assemble firearms.[305] Moreover, the Court finds that banning the importation of firearms and use of imported parts has a "reasonable fit" with Congress's important government objectives.[306] Unlike in *Heller*, where the Supreme Court found that D.C.'s challenged regulation requiring handguns to be disabled made it "impossible for citizens to use them for the core lawful purpose of self-defense,"[307] the challenged provisions here restrict only one commer-

---

dissident or psychopath," but that agencies failed to exercise their discretion).

**300.** Contemporaneous remarks of individual legislators are not controlling in analyzing legislative history, but may be useful to aid in the Court's inquiry here. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 118, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) (considering a single senator's statements on a federal statute but finding it ultimately unpersuasive); *Rogers v. Frito–Lay, Inc.,* 611 F.2d 1074, 1080 (5th Cir. 1980) ('In trying to learn Congressional intent by examining the legislative history of a statute, we look to the purpose the original enactment served, the discussion of statutory meaning in committee reports, the effect of amendments whether accepted or rejected and the remarks in debate preceding passage."); *Dunn McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.,* 964 F.Supp. 1125, 1137 (S.D. Tex. 1995) ("Although, these statements are not controlling, the Court may consider their relevance in determining legislative intent."), *aff'd sub nom. Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.,* 112 F.3d 1283 (5th Cir. 1997).

**301.** *Id.*

**302.** *Id.*

**303.** *See* 114 Cong. Rec. 23,072 (1968) (statement of Rep. Frank J. Horton) (also noting that his propose to impose import controls was aimed at halting "the influx of guns which have obvious suitability for crime" and had "no legitimate purpose, recreational or otherwise.").

**304.** Rec. Doc. 8–1 at 13.

**305.** *See, e.g., Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 434, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) ("[W]e find that reducing crime is a substantial government interest"); *United States v. Griffin,* 7 F.3d 1512, 1517 (10th Cir. 1993) ("Important government interests include effective crime detection and prevention, and minimizing the risk of harm to officers and the public."); *United States v. Gonzales,* No. 10-967, 2011 WL 5288727, at *7 (D. Utah Nov. 2, 2011) ("In this case, the government has advanced several general interests, including public safety, crime prevention, and the need to keep firearms favored by criminals off the streets. These are all important objectives." (citations omitted)).

**306.** *See Nat'l Rifle Ass'n of Am., Inc.,* 700 F.3d at 195.

**307.** *Heller,* 554 U.S. at 630, 128 S.Ct. 2783. *See also United States v. Decastro,* 682 F.3d 160, 166 (2d Cir. 2012).

cial avenue to acquire firearms. The laws do not prevent someone from acquiring firearms through alternative means, such as purchasing a firearm domestically or acquiring firearms through transfers.[308] Members of Congress also recognized that previous efforts to grant executive agencies the discretionary authority to impose import controls were not successful.[309] Moreover, the challenged provisions establish some exceptions to the import ban for those lawful purposes for which an imported firearm may be required.[310] In other words, the "practical impact" and burden of the laws on the core purposes and rights of the Second Amendment are minimal,[311] and the laws are reasonably fitted to accomplish the Government's purpose.[312] Accordingly, the Court finds that 18 U.S.C. § 922(*l*) and § 922(r) do not violate the Second Amendment. Thus, the Court will grant the Government's motion to dismiss Plaintiff's Second Amendment challenges to these provisions pursuant to Federal Rule of Civil Procedure 12(b)(6).

### c. Whether the challenged provisions of the NFA violate the Second Amendment

Next, Plaintiff argues that several provisions of the NFA imposing taxation and application requirements on transferring and making certain weapons violate the Second Amendment.[313] In particular, Plaintiff challenges the following provisions: (1) 26 U.S.C. § 5811, which taxes the transfer of such weapons as machine guns, silencers, short barreled rifles, and short barreled shotguns; (2) 26 U.S.C. § 5812, which establishes the registration and application requirements for transfers of such weapons; and (3) 26 U.S.C. § 5821, which taxes the making of such weapons.[314] Additionally, construing Plaintiff's *pro se* complaint liberally, it appears that Plaintiff also seeks to challenge 26 U.S.C. § 5822, which establishes registration and application requirements for the making of certain weapons.[315] As discussed *supra*, the Court found that Plaintiff lacks standing to

---

**308.** *See Decastro*, 682 F.3d at 168 (noting that, "[i]n light of the ample alternative means of acquiring firearms for self-defense purposes, a law prohibiting transporting into one's state of residence a firearm acquired outside the state "does not impose a substantial burden on the exercise of Decastro's Second Amendment rights.").

**309.** *See* 114 Cong. Rec. 23,072 (1968) (statement of Rep. Frank J. Horton).

**310.** Title 18 U.S.C. § 922(*l*), which bans the importation of any firearm or ammunition, allows imports for certain purposes listed under 18 U.S.C. § 925(d), including scientific, research, and sporting purposes, as well as to use as museum pieces.

**311.** *See Decastro*, 682 F.3d at 166 (noting that *Heller* "emphasized the practical impact of a challenged regulation on the ability of citizens to possess and use guns for the core lawful purpose of self-defense.").

**312.** *See Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d at 195 ("This more lenient level of scrutiny could be called 'intermediate' scrutiny, but regardless of the label, this level requires the government to demonstrate a 'reasonable fit' between the challenged regulation and an 'important' government objective.").

**313.** Rec. Doc. 1 at 17.

**314.** *Id.* at 17–19.

**315.** The Court notes that, in the final "prayer for relief" section of his complaint, Plaintiff requests for the first time the additional relief of an injunction against 26 U.S.C. § 5822. *See* Rec. Doc. 1 at 19–20. While Plaintiff did not directly assert a cause of action against 26 U.S.C. § 5822 when listing his six causes of action, because Plaintiff is proceeding *pro se*, the Court will assume Plaintiff intended to bring a claim against 26 U.S.C. § 5822. Accordingly, because Defendant has argued that "none of [Plaintiff's] claims have legal merit … [and] [t]he Court should therefore dismiss this case in its entirety," the Court will consider whether Plaintiff has failed to state a claim challenging 26 U.S.C. § 5822 pursuant to Rule 12(b)(6). *See* Rec. Doc. 8–1 at 1–2.

challenge 26 U.S.C. § 5811 and 26 U.S.C. § 5812. Accordingly, the Court will now consider Plaintiff's Second Amendment challenges to 26 U.S.C. § 5821 and § 5822.

Pursuant to Section 5821, a person making a firearm must pay a tax of $200 for each firearm made, while Section 5822 establishes application and registration requirements for the making of a firearm analogous to the requirements of 26 U.S.C. § 5812.[316] The Government asserts that Plaintiff's Second Amendment challenge to these provisions fails because the provisions are a longstanding, presumptive lawful measure and because there is no constitutional right to make a firearm without paying taxes on it.[317] Plaintiff argues that the Government's registration and taxation scheme was passed to discourage or eliminate firearm sales and that it violates his individual right to keep and bear arms guaranteed by the Second Amendment.[318] Plaintiff avers that the Government "does not have the power to tax, and therefore destroy, what it has been forbidden by the Second Amendment to infringe." [319]

To determine whether 26 U.S.C. § 5821 and § 5822 violate Plaintiff's rights as established by the Second Amendment, the Court will again employ the Fifth Circuit's two-step analysis. Thus, the Court will first consider whether either section "impinges upon a right protected by the Second Amendment—that is, whether the law regulates conduct that falls within the scope of the Second Amendment's guarantee." [320] First, the Court notes that Section 5821's $200 tax and Section 5822's application requirements for making a firearm do not effect a ban on firearms, but only impose certain tax and registration requirements on the making of a firearm. Additionally, the Court notes that, similar to its discussion of the GCA provisions, under the Fifth Circuit's holding in *National Rifle Association of America, Inc.*, regulations provided for by the NFA of 1934 may constitute a "longstanding" and presumptively lawful measure.[321] Based on the foregoing, the Court finds that 26 U.S.C. § 5821 and § 5822's requirements on making a firearm impose only a minimal burden on Plaintiff's Second Amendment rights. However, the provisions do, in some measure, inhibit a law-abiding, responsible citizen from making a firearm without first paying the $200 tax and obtaining government approval prior to making the firearm. Accordingly, the Court will proceed to step two of the Fifth Circuit's two-step analysis.

---

**316.** Title 26 U.S.C. § 5822 provides:

No person shall make a firearm unless he has (a) filed with the Secretary a written application, in duplicate, to make and register the firearm on the form prescribed by the Secretary; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made in the application form in such manner as the Secretary may by regulations prescribe; (d) identified himself in the application form in such manner as the Secretary may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the Secretary to make and register the firearm and the application form shows such approval. Applications shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law.

**317.** Rec. Doc. 8–1 at 11.

**318.** Rec. Doc. 1 at 17; Rec. Doc. 9 at 21–22.

**319.** Rec. Doc. 9 at 23.

**320.** *Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d at 194.

**321.** *See id.* at 196–97 (discussing how laws passed in the mid-20th century may be considered "longstanding").

Under the second step of the Fifth Circuit's two-step inquiry, the Court must consider "whether to apply intermediate or strict scrutiny to the law," and then "determine whether the law survives the proper level of scrutiny."[322] The appropriate level of scrutiny "depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right."[323] When a regulation "threatens a right at the core of the Second Amendment," such as the right to possess and use a handgun to defend the home, courts should apply strict scrutiny.[324] Less severe regulations that do not encroach on the core of the Second Amendment are reviewed under the more lenient "intermediate" scrutiny, which requires the government to demonstrate that there is a "reasonable fit" between the regulation and an "important" government objective.[325] Here, the challenged provisions of the NFA pose even less of a burden on Plaintiff's rights under the Second Amendment than the ban on importation of firearms considered *supra*, as they do not absolutely prohibit making one's own firearms and merely imposes a tax and application requirement prior to making the firearm. Thus, because it cannot be said that the tax threatens a core right of the Second Amendment, the Court finds that intermediate scrutiny is the appropriate level of review to apply here.[326]

As stated *supra*, a challenged law may survive intermediate scrutiny if there is a "reasonable fit" between the regulation and an "important" government objective.[327] Prior to the enactment of the NFA, Congress recognized that the country struggled to control the violence wrought by "gangsters, racketeers, and professional criminals."[328] As the D.C. Circuit has pointed out, "[t]he emergence of organized crime as a major national problem led to the enactment of the National Firearms Act of 1934."[329] Similarly to the GCA, the NFA was adopted by Congress to establish a nationwide system to regulate the sale, transfer, license, and manufacturing of certain "dangerous weapons"[330] such as "machine guns, sawed-off shotguns, sawed-off rifles, and other firearms, other than pistols and revolvers, which may be concealed on the persons, and silencers."[331] Congress recognized that the states had only a limited ability to address the "growing frequency of crimes of violence in which people are killed or injured by the use of dangerous weapons," and that the federal government had the power to more

---

322. *Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d at 194.

323. *Id.* at 195 (citations omitted).

324. *Id.* (citations omitted).

325. *Id.* (citations omitted).

326. *See, e.g., United States v. Gonzales*, No. 2:10-CR-00967 CW, 2011 WL 5288727, at *7 (D. Utah Nov. 2, 2011) (applying intermediate scrutiny to a Second Amendment challenge to the NFA's taxation and registration requirements, as the NFA "only regulates, and does not ban, the firearms at issue, [and thus] it does not substantially burden constitutional rights.").

327. *Id.* at 195 (citations omitted).

328. *See* 78 Cong. Rec. 11,400 (1934) (statement of Rep. Robert L. Doughton) ("For some time this country has been at the mercy of the gangsters, racketeers, and professional criminals."); Nat'l Firearms Act Hearings, 73d Cong. 4 (1934) (Statement of Homer. S. Cummings, Att'y Gen. of the United States) ("[T]here are more people in the underworld today armed with deadly weapons, in fact, twice as many, as there are in the Army and the Navy of the United States combined").

329. *Lomont v. O'Neill*, 285 F.3d 9 (D.C. Cir. 2002).

330. *See* H. R. Rep. No. 1780 (1934).

331. H.R. Rep. No. 75-2457, at 1 (1938).

effectively respond to the crisis.[332] Thus, a collective response was needed to target "the roaming groups of predatory criminals who know . . . they are safer if they pass quickly across a state line." [333] As the Government points out, the NFA targets "certain weapons likely to be used for criminal purposes." [334] Based on the foregoing, the Court finds that important government objectives support Congress's decision to impose taxation and registration requirements on the making of a firearm pursuant to 26 U.S.C. § 5821 and § 5822.[335]

Moreover, the Court finds that levying a $200 tax and imposing a registration requirement for the making of a firearm both have a "reasonable fit" with Congress's important government objectives. The requirements on making a firearm were passed as part of a broader regulatory scheme to control the flow of firearms needed to restrict certain dangerous or irresponsible individuals from obtaining those firearms. The NFA requires every importer, manufacturer, and dealer to register with the Secretary of Treasury (26 U.S.C. § 5802) and pay a special occupational tax (26 U.S.C. § 5801).[336] Likewise, a tax of $200 is imposed on each firearm made (26 U.S.C. § 5821), and upon each subsequent transfer (26 U.S.C. § 5811).[337] Makers and transferors of firearms are further required to file a written application with the Secretary of the Treasury and obtain prior approval before a "firearm" may be made (26 U.S.C. § 5822) or transferred (26 U.S.C. § 5812). The challenged provisions, whether considered alone or in conjunction with the broader scheme established by the NFA, do not prevent a law-abiding citizen from acquiring or making a firearm, but rather are part of a broader regulatory scheme passed to control the flow of certain firearms. The law does not prevent someone from acquiring certain firearms through alternative means, such as purchasing a firearm domestically or acquiring firearms through transfers, or from acquiring or making weapons that fall outside the regulations established by the NFA.[338] Thus, the Court finds that the "practical impact" and burden of the laws on the core purposes and rights of the Second Amendment are minimal,[339] and the laws are reasonably fitted to the Government's

---

**332.** *Id.*

**333.** Nat'l Firearms Act Hearings, 73d Cong. 4 (1934) (Statement of Homer. S. Cummings, Att'y Gen. of the United States).

**334.** Rec. Doc. 8–1 at 2 (quoting *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992)).

**335.** *See, e.g., Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) ("[W]e find that reducing crime is a substantial government interest"); *United States v. Griffin*, 7 F.3d 1512, 1517 (10th Cir. 1993) ("Important government interests include effective crime detection and prevention, and minimizing the risk of harm to officers and the public."); *United States v. Gonzales*, No. 10-967, 2011 WL 5288727, at *7 (D. Utah Nov. 2, 2011) ("In this case, the government has advanced several general interests, including public safety, crime prevention, and the need to keep firearms favored by criminals off the streets. These are all important objectives." (citations omitted)).

**336.** *See United States v. Oba*, 448 F.2d 892, 896 (9th Cir. 1971) (discussing the NFA's taxation and regulatory scheme).

**337.** *Id.*

**338.** *See Decastro*, 682 F.3d at 168 (noting that, "[i]n light of the ample alternative means of acquiring firearms for self-defense purposes, a law prohibiting transporting into one's state of residence a firearm acquired outside the state "does not impose a substantial burden on the exercise of Decastro's Second Amendment rights.").

**339.** *See id.* at 166 (noting that *Heller* "emphasized the practical impact of a challenged regulation on the ability of citizens to possess and use guns for the core lawful purpose of self-defense").

purpose.[340] Accordingly, the Court will grant the Government's motion to dismiss Plaintiff's Second Amendment challenges to 26 U.S.C. § 5821 and 26 U.S.C. § 5822 pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 3. Whether the challenged provisions of the GCA violate the Necessary and Proper Clause or the Tenth Amendment

Next, the Government argues that Plaintiff's claim that certain provisions of the GCA violate the Necessary and Proper Clause and the Tenth Amendment should be dismissed pursuant to Rule 12(b)(6).[341] The Government avers that Congress had the constitutional authority to enact the GCA through the use of its taxing power and Commerce Clause powers.[342] In response, Plaintiff asserts that the Necessary and Proper Clause prohibits Congress from using its delegated powers to enact pretext laws to infringe on Plaintiff's Second Amendment rights or to enact laws beyond the federal government's enumerated powers.[343] Plaintiff argues that the Constitution does not provide the federal government with a general police power or a specific power to regulate firearms ownership.[344] Moreover, Plaintiff cites to *United States v. Lopez* to support his contention that the Commerce Clause does not empower Congress to regulate intrastate activity or non-economic activity such as the possession of certain firearms.[345]

■ Pursuant to Article I, Section 8, Clause 18 of the United States Constitution, Congress has the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." [346] "In determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, [courts] look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." [347]

■ Likewise, the Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." As the Supreme Court has previously observed, the Tenth Amendment "confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States." [348] The Fifth Circuit has held that "[w]hen Congress properly exercises its authority under an enumerated constitutional power, the Tenth Amendment is not implicated." [349] "As stated previously, the Tenth

---

**340.** *See Nat'l Rifle Ass'n of Am., Inc.,* 700 F.3d at 195 ("This more lenient level of scrutiny could be called 'intermediate' scrutiny, but regardless of the label, this level requires the government to demonstrate a 'reasonable fit' between the challenged regulation and an 'important' government objective.").

**341.** Rec. Doc. 8–1 at 13.

**342.** *Id.* at 14–15.

**343.** Rec. Doc. 9 at 15,

**344.** *Id.*

**345.** *Id.* at 18–19 (citing *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)).

**346.** U.S. Const. art. I, § 8, cl. 18.

**347.** *United States v. Thompson,* 811 F.3d 717, 724 (5th Cir. 2016) (quoting *United States v. Comstock,* 560 U.S. 126, 134, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010)) (quotation marks omitted).

**348.** *New York v. United States,* 505 U.S. 144, 156, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

**349.** *United States v. DeCay,* 620 F.3d 534, 542 (5th Cir. 2010) (citing *N.Y.,* 505 U.S. at 156,

Amendment's reservation to the states of power not conferred on the federal government in no way inhibits the activities of the federal government in situations in which a power has been so conferred." [350]

Accordingly, the Court will first consider whether Congress properly exercised its authority under an enumerated power when it passed the challenged provisions of the GCA. As discussed *supra*, Plaintiff asserts in his complaint that three provisions of the GCA are unconstitutional under the Necessary and Proper Clause and the Tenth Amendment: (1) 18 U.S.C. § 922(*l*), which bans the importation of firearms and ammunition regulated under the GCA unless authorized by the Attorney General; (2) 18 U.S.C. § 922(r), which forbids assembling such weapons from imported parts; and (3) 18 U.S.C. § 922(*o*), which makes it unlawful to transfer or possess any machine gun manufactured after May 19, 1986. [351]

### a. Title 18 U.S.C. § 922(o)

The Government asserts that the challenged provisions of the GCA were each passed pursuant to Congress's authority under the Commerce Clause. [352] The Commerce Clause provides Congress with the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." [353] In *United States v. Lopez*, the Supreme Court held that 18 U.S.C. § 922(q), which banned the possession of firearms in school zones, exceeded Congress's authori-

ty under the Commerce Clause and was unconstitutional. [354] The *Lopez* Court held that Congress could regulate three types of activity under the Commerce Clause: (1) the "use of the channels of interstate commerce;" (2) "instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) activities which have "a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." [355] Noting that the first two categories did not apply, the Supreme Court considered whether banning firearms in school zones fit under the third category, *i.e.* whether "a rational basis existed for concluding that a regulated activity sufficiently affected interstate commerce." [356] The Court found that it did not, as "possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." [357] The Supreme Court additionally noted that the legislative history did not include congressional findings that would otherwise demonstrate an effect upon interstate commerce. [358]

Two years later, in *United States v. Knutson*, the Fifth Circuit considered whether, in light of the Supreme Court's rationale in *Lopez*, Congress had the authority under the Commerce Clause to enact 18 U.S.C. § 922(*o*), which bans the

112 S.Ct. 2408; *Deer Park Indep. Sch. Dist. v. Harris County Appraisal Dist.*, 132 F.3d 1095, 1099 (5th Cir. 1998)).

**350.** *Deer Park Indep. Sch. Dist. v. Harris Cty. Appraisal Dist.*, 132 F.3d 1095, 1099 (5th Cir. 1998) (citing *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 549–50, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

**351.** *Id.* at 16–17.

**352.** Rec. Doc. 8–1 at 14.

**353.** U.S. Const. art. I, § 8, cl. 3.

**354.** 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

**355.** *Id.* at 558–89, 115 S.Ct. 1624.

**356.** *Id.* at 557, 115 S.Ct. 1624.

**357.** *Id.* at 567, 115 S.Ct. 1624.

**358.** *Id.* at 562–63, 115 S.Ct. 1624.

transfer or possession of a machine gun that was not already lawfully possessed before May 19, 1986.[359] The Fifth Circuit held that "much of the conduct covered by § 922(o ) fits comfortably within Constitutional bounds under either of the first two *Lopez* categories," as machine gun possessions are often the result of a series of interstate commercial transactions.[360] Moreover, the Fifth Circuit found that regulating the transfer and possession of machine guns also fit under the third category, as "[i]t is obvious 'to the naked eye' " that it has a substantial effect on interstate commerce.[361] The Fifth Circuit found that the legislative history of the GCA cited "convincing evidence" of machine guns' substantial effect on interstate commerce

and noted that several other courts of appeals had also upheld Section 922(o) under the Commerce Clause.[362]

Here, Plaintiff has not identified any rationale to differentiate his claims from the claims rejected by the Fifth Circuit in *Knutson*, which made clear that Congress had the authority under the Commerce Clause to enact 18 U.S.C. § 922(o ).[363] Accordingly, the Court concludes that, because Congress has "properly exercise[d] its authority under an enumerated constitutional power," [364] Plaintiff's Tenth Amendment challenge to Section 922(o ) fails. Moreover, the Court finds that Section 922(o ) is "rationally related to the implementation of" Congress's power under the Commerce Clause.[365] Thus, Plaintiff's Necessary and

**359.** 113 F.3d 27, 27 (5th Cir. 1997).

**360.** *Id.* at 29 & n.15 (citing *United States v. Hunter*, 843 F.Supp. 235, 249 (E.D. Mich. 1994) (finding that the interstate flow of machine guns "not only has a substantial effect on interstate commerce; it is interstate commerce.")).

**361.** *Id.* at 30.

**362.** *Id.* (citing *United States v. Kirk*, 105 F.3d 997, 1000 (5th Cir. 1997); *United States v. Rybar*, 103 F.3d 273, 283 (3d Cir. 1996); *United States v. Kenney*, 91 F.3d 884, 889 (7th Cir. 1996)).

**363.** *Id. See also Kirk*, 105 F.3d at 998 ("Every circuit that has examined 18 U.S.C. § 922(o )—both before and after *United States v. Lopez* ...—has determined that § 922(o ) does not exceed the authority granted to Congress by the Commerce Clause."); *Rybar*, 103 F.3d at 273 (upholding § 922(o) under the third category of activity that Congress may regulate under the Commerce Clause, as it regulated activities having a substantial effect on interstate commerce); *United States v. Beuckelaere*, 91 F.3d 781 (6th Cir. 1996) (upholding § 922(o ) under all three *Lopez* categories); *Kenney*, 91 F.3d at 891 (holding that "both the nature of the statute and the history of federal firearms legislation" suggest that Section 922(o ) was a valid exercise of Congress's Commerce Clause power to regulate activity that has a substantial effect on inter-

state commerce, *i.e.* the third category in *Lopez* ); *United States v. Rambo*, 74 F.3d 948 (9th Cir. 1996) (holding that Section 922(o ) may be upheld under *Lopez*'s first category of valid regulation under the Commerce Clause, which permits Congress to regulate the use or misuse of the channels of commerce); *United States v. Wilks*, 58 F.3d 1518 (10th Cir. 1995) (upholding § 922(o) under the second category, as a regulation of a thing in interstate commerce)

**364.** *United States v. DeCay*, 620 F.3d 534, 542 (5th Cir. 2010) (citing *New York*, 505 U.S. at 156, 112 S.Ct. 2408; *Deer Park Indep. Sch. Dist. v. Harris County Appraisal Dist.*, 132 F.3d 1095, 1099 (5th Cir. 1998)).

**365.** *United States v. Thompson*, 811 F.3d 717, 724 (5th Cir. 2016) (quoting *United States v. Comstock*, 560 U.S. 126, 134, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010)) (quotation marks omitted). *See, e.g., Knutson*, 113 F.3d at 31 ("We hold that Congress could have had a rational basis for concluding that § 922(o ) regulates conduct that has a substantial effect on interstate commerce, and that § 922(o ) is not unconstitutional."); *United States v. Kirk*, 70 F.3d 791, 797 (5th Cir. 1995) (finding that there is "a rational basis to conclude that federal regulation of intrastate incidents of transfer and possession [of machine guns] is essential to effective control of the interstate incidents of such traffic" and holding that

Proper Clause challenge to Section 922(*o*) also fails. Therefore, the Court will grant the Government's motion to dismiss Plaintiff's Necessary and Proper Clause and Tenth Amendment challenges to 18 U.S.C. § 922(*o*) pursuant to Rule 12(b)(6).

### b. Title 18 U.S.C. §§ 922(l) and (r)

Next, the Government argues that 18 U.S.C. §§ 922(*l*) and (r) of the GCA were also passed pursuant to Congress's authority under the Commerce Clause.[366] The Commerce Clause provides Congress with the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." [367] Thus, Congress has "plenary authority" over both interstate and foreign commerce.[368] "No sort of trade can be carried on between this country and any other, to which this power does not extend." [369] As such, the Supreme Court has held that "Congress may determine what articles may be imported into this country and the terms upon which importation is permitted." [370] This includes the power to "close[ ]the channels of commerce entirely" [371] and "to lay an embargo or to prohibit altogether the importation of specified articles." [372]

Title 18 U.S.C. § 922(*l*) bans the importation of firearms and ammunition unless authorized by the Attorney General, while 18 U.S.C. § 922(r) prohibits assembling certain firearms from imported parts. The Court determines that both provisions of the GCA regulating the importation and use of foreign firearms and firearm parts were properly enacted pursuant to Congress's authority under the Commerce Clause. The Court finds that the analysis employed by the Fifth Circuit in *Knutson* to uphold the ban on possessing machine guns as a valid exercise of Congress's authority under the Commerce Clause applies equally to the importation, possession, and use of foreign firearms and foreign parts. In particular, the Court finds that the conduct covered by Sections 922(*l*) and (r) "fits comfortably within Constitutional bounds under" all three *Lopez* categories, as imported parts and firearms are the direct result of a series of foreign and interstate commercial transactions that have a substantial effect on interstate commerce.[373]

Accordingly, the Court concludes that, because Congress has "properly exercise[d] its authority under an enumerated constitutional power," [374] Plaintiff's Tenth Amendment challenges to Sections 922(*l*) and (r) fail. Moreover, the Court finds that

Section 922(*o*) "is a rational exercise of the authority granted Congress under the Commerce Clause"), *on reh'g en banc*, 105 F.3d 997 (5th Cir. 1997).

**366.** Rec. Doc. 8–1 at 14.

**367.** U.S. Const. art. I, § 8, cl. 3.

**368.** *See Calif. Bankers Ass'n v. Shultz*, 416 U.S. 21, 46, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) ("The plenary authority of Congress over both interstate and foreign commerce is not open to dispute.")

**369.** *Bd. of Trustees of Univ. of Illinois v. United States*, 289 U.S. 48, 56, 53 S.Ct. 509, 77 L.Ed. 1025 (1933).

**370.** *Id.* at 57, 53 S.Ct. 509.

**371.** *California Bankers Ass'n*, 416 U.S. at 47, 94 S.Ct. 1494.

**372.** *Bd. of Trustees of Univ. of Illinois*, 289 U.S. at 57, 53 S.Ct. 509.

**373.** *Knutson*, 113 F.3d at 29–31.

**374.** *United States v. DeCay*, 620 F.3d 534, 542 (5th Cir. 2010) (citing *N.Y.*, 505 U.S. at 156, 112 S.Ct. 2408; *Deer Park Indep. Sch. Dist. v. Harris County Appraisal Dist.*, 132 F.3d 1095, 1099 (5th Cir. 1998)).

Sections 922(*l*) and (r) are "rationally related to the implementation of" Congress's power under the Commerce Clause.[375] Thus, Plaintiff's Necessary and Proper Clause challenge to Sections 922(*l*) and (r) also fail. Therefore, the Court will grant the Government's motion to dismiss Plaintiff's Necessary and Proper Clause and Tenth Amendment challenges to 18 U.S.C. § 922(*l*) and 18 U.S.C. § 922(r) pursuant to Rule 12(b)(6).

### 4. Whether the challenged provisions of the NFA violate the Necessary and Proper Clause or the Tenth Amendment

Finally, the Government asserts that Plaintiff's challenges under the Necessary and Proper Clause and the Tenth Amendment to certain provisions of the NFA should also be dismissed.[376] As stated *supra*, the Court has found that Plaintiff lacks standing to challenge 26 U.S.C. § 5811 and 26 U.S.C. § 5812's taxation and registration requirements for transfers of firearms. Accordingly, the Court will only consider whether 26 U.S.C. § 5821's tax on the making of certain firearms and 26 U.S.C. § 5822's registration requirements on the making of certain firearms violate either the Necessary and Proper Clause or the Tenth Amendment.

The Government contends that the taxation and registration requirements of the NFA were both passed pursuant to the taxing power of Congress.[377] The United States Constitution grants Congress the power to lay and collect taxes.[378] In *Sonzinsky v. United States*, the Supreme Court considered the analogous question of whether the NFA's $200 tax on dealers in firearms was a constitutional exercise of Congress's enumerated powers.[379] Similar to Plaintiff here, the criminal defendant in *Sonzinsky* argued that the levy was not a true tax, "but a penalty imposed for the purpose of suppressing traffic in a certain noxious type of firearms, the local regulation of which is reserved to the states because not granted to the national government."[380] The Supreme Court noted that the defendant was asking the Court to say that a taxing measure, by virtue of its deterrent effect on the activities taxed, is a regulation that is beyond Congress's taxing power.[381] The Supreme Court declined to do so, holding that "a tax is not any the less a tax because it has a regulatory effect."[382] The Court held that, since the measure operates as a tax, it is within the national taxing power, and courts should not "speculate as to the motives which moved Congress to impose it."[383] Likewise, in *United States v. Ardoin*, the Fifth

---

**375.** *United States v. Thompson,* 811 F.3d 717, 724 (5th Cir. 2016) (quoting *United States v. Comstock,* 560 U.S. 126, 134, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010)) (quotation marks omitted). *See, e.g., Knutson,* 113 F.3d at 31 ("We hold that Congress could have had a rational basis for concluding that § 922(*o*) regulates conduct that has a substantial effect on interstate commerce, and that § 922(*o*) is not unconstitutional."); *United States.v. Kirk,* 70 F.3d 791, 797 (5th Cir. 1995) (finding that there is "a rational basis to conclude that federal regulation of intrastate incidents of transfer and possession [of machine guns] is essential to effective control of the interstate incidents of such traffic" and holding that Section 922(*o*) "is a rational exercise of the authority granted Congress under the Com-

merce Clause."), *on reh'g en banc,* 105 F.3d 997 (5th Cir. 1997).

**376.** Rec. Doc. 8–1 at 13–16.

**377.** *Id.* at 14.

**378.** U.S. Const. art. I, § 8; cl. 1.

**379.** 300 U.S. 506, 511, 57 S.Ct. 554, 81 L.Ed. 772 (1937).

**380.** *Id.* at 512, 57 S.Ct. 554.

**381.** *Id.* at 512–13, 57 S.Ct. 554.

**382.** *Id.*

**383.** *Id.* at 514, 57 S.Ct. 554.

Circuit confirmed that the taxing provisions of the NFA can be upheld under Congress's taxing authority.[384]

█ Here, 26 U.S.C. § 5821 is on its face only a taxing measure, as it merely imposes a $200 tax on the making of certain firearms. Moreover, contrary to Plaintiff's suggestions, the tax does not completely prohibit Plaintiff from exercising his rights. Thus, based on the foregoing, this Court finds that Congress validly exercised its constitutional authority under its taxing power when it enacted the challenged provision.[385] Similarly, the Fifth Circuit and other courts have upheld Congress's ability to enforce a tax through the promulgation of firearm registration requirements.[386] As the Fifth Circuit held in *United States v. Gresham*, a requirement to register pipe bombs was "not a mere pretext for police power, but is 'part of the web of regulation aiding enforcement of the transfer tax provision' . . . [and], therefore, the registration requirement is plainly constitutional."[387] Moreover, as the Fifth Circuit determined in *Ardoin*, requirements to register weapons can be constitutionally premised on Congress's taxing power.[388] Here, the Court notes that 26 U.S.C. § 5822 requires Plaintiff to file an application to make a firearm with a proper stamp affixed demonstrating that Plaintiff has paid the required tax and include identifying information such as fingerprints and photographs, and is thus related to Section 5821's taxing provision. Thus, based on the foregoing, this Court determines that Congress validly exercised its constitutional authority under its taxing power when it enacted the challenged provision. Accordingly, the Court concludes that, because Congress has "properly exercise[d] its authority under an enumerated constitutional power,"[389] Plaintiff's Tenth

**384.** 19 F.3d 177, 180 (5th Cir. 1994).

**385.** *See, e.g., Sonzinsky*, 300 U.S. at 511, 57 S.Ct. 554 (upholding other NFA taxation provisions as a valid exercise of Congress's taxation power); *Ardoin*, 19 F.3d at 180 (same); *United States v. Parker*, 960 F.2d 498, 500 (5th Cir. 1992) (stating that the provision of the NFA making possession of an unregistered firearm unlawful was "part of the web of regulation aiding enforcement of the transfer tax provision in 26 U.S.C. section 5811 and the constitutional bedrock for the statute is the power to tax rather than the commerce power.") (quotation marks omitted).

**386.** *See United States v. Gresham*, 118 F.3d 258, 263 (5th Cir. 1997) ("Congress may still tax the illegal possession of such machine guns and may still assess criminal penalties for failure to comply with the registration requirements promulgated to enforce the tax."); *Ardoin*, 19 F.3d at 180 (holding that the NFA's taxation and registration requirements can be upheld under Congress's taxing power, regardless of whether the ATF chooses to allow tax payments or registration for illegal weapons); *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972) ("Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons. Such a penalty imposed on transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax."); *see also United States v. Bournes*, 105 F.Supp.2d 736, 738 (E.D. Mich. 2000) ("[N]umerous courts have held that the registration provisions of the NFA, including § 5861(d), are permissible incidents to the legislative taxing power, because registration facilitates the collection of taxes on the making and transfer of firearms."), *aff'd*, No. 01-2416, 2003 WL 21675537 (6th Cir. 2003) (citing *United States v. Birmley*, 529 F.2d 103, 106–07 (6th Cir. 1976); *United States v. Dodge*, 61 F.3d 142, 145–46 (2d Cir. 1995); *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972)).

**387.** *Gresham*, 118 F.3d at 263.

**388.** *Ardoin*, 19 F.3d at 180

**389.** *United States v. DeCay*, 620 F.3d 534, 542 (5th Cir. 2010) (citing *New York*, 505 U.S. at 156, 112 S.Ct. 2408; *Deer Park Indep. Sch. Dist. v. Harris Cnty. Appraisal Dist.*, 132 F.3d 1095, 1099 (5th Cir. 1998)).

Amendment challenge to Section 5821 and Section 5822 fail. Moreover, the Court finds that Section 5821 and Section 5822 are "rationally related to the implementation of" Congress's taxing power.[390] Thus, Plaintiff's Necessary and Proper Clause challenge to Section 5821 and Section 5822 also fail. Therefore, the Court will grant the Government's motion to dismiss Plaintiff's Necessary and Proper Clause and Tenth Amendment challenges to 18 U.S.C. § 5821 and 18 U.S.C. § 5822 pursuant to Rule 12(b)(6).

### 3. Plaintiff's Pending Motion for Partial Preliminary Injunction

Finally, the Court notes that after the Government filed its motion to dismiss on June 24, 2016,[391] Plaintiff filed a motion for a partial preliminary injunction on July 26, 2016, to "allow[ ] Plaintiff to exercise his Second Amendment rights pending a trial on the merits."[392] Both parties agree that no oral argument or evidentiary hearing was required on either motion filed.[393] The Court further notes that no factual disputes were raised in the parties' motions that would otherwise merit an evidentiary

hearing.[394] Moreover, because the Court has granted the Government's motion to dismiss, the Court will not consider Plaintiff's pending motion for preliminary injunction or require a hearing on the motion. Accordingly, the Court will deny Plaintiff's motion for a partial preliminary injunction as moot.

### IV. Conclusion

Based on the foregoing, the Court finds that Plaintiff lacks standing to challenge 26 U.S.C. § 5811 and 26 U.S.C. § 5812. The provisions only impose requirements on the transferor, but Plaintiff has not alleged that he seeks to transfer a firearm or that an application to transfer a firearm was ever filed or rejected. The Court also finds that, pursuant to the Fifth Circuit's holding in *Hollis v. Lynch*,[395] Plaintiff has standing to challenge 18 U.S.C. § 922(*o* ). However, the Court finds that the Government's motion to dismiss should be granted as to Plaintiff's challenges to 18 U.S.C. § 922(*l* ), 18 U.S.C. § 922(*o* ), 18 U.S.C. § 922(r), 26 U.S.C. § 5821, and 26 U.S.C. § 5822. The Court finds that none of these challenged provisions of the GCA or NFA

---

**390.** *United States v. Thompson*, 811 F.3d 717, 724 (5th Cir. 2016) (quoting *United States v. Comstock*, 560 U.S. 126, 134, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010)) (quotation marks omitted).

**391.** Rec. Doc. 8.

**392.** Rec. Doc. 15–1 at 2.

**393.** *See* Rec. Doc. 22 at 2 (both parties agreeing that "[o]ral argument was not and shall not be requested on the motion[s], nor is an evidentiary hearing required.").

**394.** The Fifth Circuit has repeatedly held that no evidentiary hearing on a motion for preliminary injunction is required when there are no genuine factual disputes at issue. *See Heil Trailer Int'l Co. v. Kula*, 542 Fed.Appx. 329, 334 & n.15 (5th Cir. 2013); *Commerce Park at DFW Freeport v. Mardian*

*Const. Co.*, 729 F.2d 334, 341 (5th Cir. 1984) (upholding a district court's decision to rule on a motion for preliminary injunction without a hearing when there were no disputed versions of fact and the parties "were given ample opportunity to present their respective views of the legal issues involved."). Here, the issues before the Court in both of the parties' pending motions involve only questions of law, *i.e.* whether certain provisions of the GCA and NFA are constitutional, and neither party has offered any evidence or affidavits creating a factual dispute. Thus, because there are no factual disputes between the parties, a Rule 65 evidentiary hearing was not required. Moreover, because the Court first considers and grants the Government's motion to dismiss, and the Court will deny as moot Plaintiff's motion for a partial preliminary injunction without addressing the parties' arguments.

**395.** 827 F.3d 436 (5th Cir. 2016).

violate the Second Amendment, Tenth Amendment, or the Necessary and Proper Clause. Thus, all of Plaintiff's claims are dismissed. Accordingly,

**IT IS HEREBY ORDERED** that Defendant United States of America's "Motion to Dismiss" [396] is **GRANTED** to the extent that Plaintiff's claims challenging the constitutionality of 26 U.S.C. § 5811 and 26 U.S.C. § 5812 are dismissed pursuant to Rule 12(b)(1) for lack of standing and Plaintiff's claims challenging 18 U.S.C. § 922(l), 18 U.S.C. § 922(o), 18 U.S.C. § 922(r), 26 U.S.C. § 5821, and 26 U.S.C. § 5822 are dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion for Partial Preliminary Injunction" [397] is **DENIED AS MOOT.**